Gregory Morris
260092-0674243   (mail all docs. to this address)
P. O. Box 872
Fresno, California 93712
Plaintiff, pro. per.

1

Gregory Morris
9090 Geary Street, # 519
2   San Francisco, Califorina   94109
Plaintiff, pro. per.

3

4                                    E-filing

FILED

JUN - 4 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6

7                                                        EMC

8        IN THE DISTRICT COURT OF THE UNITED STATES
             NORTHERN DISTRICT OF CALIFORNIA
9               SAN FRANCISCO DISTRICT

10                       C 07        2890

11   GREGORY MORRIS,                    ) CASE NO.:
               Plaintiff               )
12                                     ) COMPLAINT FOR DAMAGES;
                                       ) REQUEST FOR INJUNCTIVE
13                                     ) RELIEF; REQUEST FOR
                                       ) DECLARATORY RELIEF
14   v                                 )
                                       ) (CLASS ACTION)
15                                     )
                                       ) DEMAND FOR JURY TRIAL
16   STATE BAR OF CALIFORINIA AT SAN FRANCISCO; )
     SAFECO INSURANCE COMPANY; SAFECO INSURANCE )
17   COMPANY OF AMERICA; SAFECO INSURANCE COM-  )
     PANY OF ILLINOIS; STATE BAR OF CALIFORNIA  )
18   LAWYERS ASSISTANCE PROGRAM; BOARD OF GOV-  )
     ERNORS; CITY OF FRESNO: FRESNO FIRE DEPART-)
19   MENT; DON McALPINE; ROBERT DIRSCAL; CRAW-  )
     FORD AND COMPANY; OPTION ONE MORTGAGE COM- )
20   PANY; LONG BEACH MORTGAGE COMPANY; PREMIER )
     TRUST DEED SERVICES COMPANY; FRESNO COUNTY )
21   DISTRICT ATTORNEY'S OFFICE; ELIZABETH EGAN;)
     SAN FRANCISCO SAFCO LEGAL SERVICES COMPANY;)
22   DOES 1-250,                              )
               Defendants                     )
23

24
                     STATEMENT OF JURISDICTION
25

26   1.   This is a civil action for declaratory and injunctive relief and

27   for damages for violation of the Constitution and laws of the United

28   States and for violations of the Americans with Disabilities Act and

     the Rehabilitation Act.  Plaintiffs, individually and on behalf of all

                              COMPLAINT

                                                          Page 1

22.  Also included as "Fire Defendants" are Does 7-10 who made
policy, Does 11-15, who made proceedures and customs and
who investigated the fire at plaintiff's home in a wholly incompetant
manner in conformity with rules, custómes, proceedures and policies
instituted by McAlpine and other Doe Fire defendants.

23.  Does 1-3 are alleged to have, along with McAlpine, with
wholly inadequite evidence and testing and information, arrested,
charged, prosecuted and incarcerated plaintiff without probable
cause, without a warrant and without a reasonable suspicion that
Plaintiff was guilty of a crime.

24.  Does 4-6 were supervisors for the Fresno Fire Department and
as such are also Fire defendants herein, and Fire defendants
Doe 7-10, 11-15 and other Doe defendants not yet identified as
to their specific role in the Fire Department or City of Fresno,
are involved in making and implimenting policies, customs,
proceedures, rules and training concerning the investigation
activities of the Fresno Fire Department and the Policies, proceedures
and other supervisory actions caused, failed to prevent or
created the damages suffered by plaintiff herein.

25.  Long Beach Mortgage is a corporation duly organized under the
laws of the State of California and doing business in San Francisco.

26.  Plaintiff is a resident of the City of San Francisco.

27.  Defendant, Bar Board of Governors is an entity unknown and
is a rule and policy making body for the State Bar of California.

28.  Does 16-20are policy makers and ratify and approve and regulate
customs of the State Bar of California.

29.  Each of the Public entity defendants are sued in both thier
individual and official capacity.

are employees that were involved in the Arson and Insurance Fraud

charges agianst plaintiff, Does 22-25 who were supervisors

and policy makers and Does 201-205, who were rule, policy, proceedure

and custom makers and/or persons responsible for all aspects

of the training of attorney-employees of the Fresno District Attorney's

Office are collectively refered to as the "District Attorney def-

endants" and or the "D. A. defendants".

17. Option One Mortage Company (herinafter called "Option One")

Premire Trust Deed Services Company (hereinafter called "Premier")

and Does 115-120 are hereinafter collectively referred to as the

"Deed defendants".

18. The names and capacities of each of the Doe defendants is

currently unknown to plaintiff, but Plaintiff alleges that each of

the Doe defendants is responsible and/or liable to plaintiff for

the damages alleged to have been suffered herein.  Plaintiff

will amend the complaint once the true names and capacities of

the Doe defendants become available through investigation and

discovery.

19.  Plaintiff had an accidental house fire at his home (hereinafter

called "plaintiff's home") located at 509 E. Mariners Circle,

Fresno, California  93720.

20.  The fire was investigated in various forms by the insurance

defendants, the Fire defendants and doe 21.

21.  Don McAlpine is an individual and an employee of the Fresno

fire departments at all times herein mentioned, who had investigative,

supervisory, rule, policy, proceedure and custom making authority

with the Fresno Fire Department.

12.   Defendant, State Bar of California will be hereinafter re-
ferred to as "Bar".

13.   The Bar, Bob Driscal, Board of Govorners of the Bar and
its' members, with the exception of Anthony Capozzi, who is not
a defendant herein, Does 16-20, Does 26-40, Does 40-60 are herinafter
referred to collectively as the "Bar defendants".

14.   The Fresno Fire Department, Con McAlpine and Does 1-15, the
Fresno Board of Supervisors, the City of Fresno and Supervisory
personell in connection with rules, Policies, customs and proceedures
and training concerning any aspect of investigations of fires,
including but not limited to communication proceedures with
Mortgage Companies and lien holders, insurance companies, adjust-
ment companies and expert witnesses not employed by the Fresno
Fire Department are hereinafter referred to collectively as the
"Fire defendants". The supervisors and rule makers, including any
drafters or adoptors of an investigative policy and/or proceedure
manual for such investigations, as well as the persons responsible
for the education and training of Fresno Fire Department investigators,
are Does 176-200.  All of the persons, including the Does are
included in the group of defendants refered to as "Fire defendants".

15.   Safeco, Crawford and Company (hereinafter called "Crawford")
and does 95-100 are herinafter collectively refered to as
"Insurance defendants".

16.   Fresno County, Elizebeth Egan, Fresno County District Attorney's
Office, all Doe employees and/or policy, rule, proceedure and/or
custom makers concerning any actions or inactions of the
Fresno District Attorney's Office, including Does 75-85, who

1  earlier.    The statute is further tolled by an approximate year

2  of incarceration plaintiff suffered in connection with the

3  facts surrounding this case.

4  6.   It is expected in this case that there will be much disagreement

5  as to which defendant is responsible for what percentage of the

6  damages.

7  7.   Since plaintiff is disabled by the Social Security Administration

8  in connection with the illnesses caused by the combined action

9  of the defendants, it is likely that they will be either an inter-

10  veiner or lien holder in this matter.

11  8.   Each of the defendants is the agent and or employee of each

12  of the other defendants and in doing the acts complained of herein,

13  was acting in the course and scope of said agencies and or employments,

14

15  except where it is alleged that there is a conspiracy or the cause

16  of action alleges alligations inconsistant with an agency and or

17  employment or where the cause of action is inconsistant with

18  such agency and employment allegations.

19  9.   Plaintiff, because of the substantially identical legal and

20  factual allegatios and claims for damages, as to each party,

21  reservse the prayer for relief in each cause of action until

22  the end where a common prayer for relief addresses the damages

23  of all parties.

24

25  10.   Plaintiff demands a jury trial.

26  11.   Defendant Safeco Insurance Company, Safeco of America and

27  Safeco Casualty Company will all be herinafter collectively

28  refered to as Safeco, in all pleadings and discovery or other

matters, formal or informal/

4. Defendant City of Fresno, Fresno Fire Department, Fresno County and Fresno County District Attorney's Office are municipal corporations with their principal place of business in the Eastern District of California.

5. Don McAlpine is a natural person and a citizen of the State of California and the United States and a resident of the State of California.

6. Robert Driscal is a natural person and is a citizen of the United States and resident of the State of California.and Eastern District.

7. Crawford and Company is a Corporation duly licensed to do business in the State of California and is doing business in the Northern District of California and the City of San Francisco.

8. Option One Mortgage Company is a California Corporation doing business and having a principal place of business in the Northern District of California and in the City of San Francisco.

9. Long Beach Mortgage Company is a Califronia Corporation and has its principal place of business in the Central District of California, and it does business in the Northern District of California.

10. Premier Trust Deed Services Company is a Califronia Corporation doing business in the Northern District of California.

11. Elizebeth Egan is a natural person and a citizen of the United States, residing in the Eastern Distric of California.

12. Doe 21 is a natural person, a citizen of the United States, and a resident of the Southern Distric of California and City of San Diego.

13. The Doe defendants 1-20 and 21-250 are individuals, Corporations, Municipal Corporations doing business in the Northern District of California and other parts of California and having pricnipal

COMPLAINT                                           Page 2

1  others similarly situated, seek a declaration that the actions of defen-
2  dant State Bar of California, in disaplining members who are unable
3  to defend themselves, unable to participate in their defence in a meaningful
4  way, or unable to comprehend the nature and or suggnificance of the
5  charges agianst them and without adequite notice and opportunity to be
6
7  heard, without a hearing, during which time the member is competant and
8  pursuant to established rules and regulations violate the plaintiff's
9  right to proceedural due process of law, guaranteed by the Fourteenth
10  Amendment to the United States constitution, and the right to be free
11  from arbitrary and unreasonable suspensions and disbarrments.
12  2.  Jurisdiction is based on 28 U.S.C. §§ 1343 and 1344 and 42 U.S.C.
13  § 1983 and arises out of the Fourteenth Amendment to the Constitution of
14  the United States.  Declaratory relief is authorized by 28 U.S.C. §§ 2201
15  and 2202 and Rule 57, F.R.C.P.
16
### INTRADISTRICT ASSIGNMENT
17
18  3.  The State Bar of California in the City and County of San Francisco
19  has and continues to conduct invidious discriminations agianst members
20  with mental disabilities, without adequite notice, without jurisdiction
21  and without accomondation for their disabilities in violation of
22  Federal law, as more particularly set froth herin.  These unlawful
23  actions include the prosecution of discriminatory Bar disiplinary charges
24  agianst these members, including plaintiff, in the San Francisco office
25  of the State Bar of California.  The actions compli9ned of herein are
26  in voilation of the Americans with Disabilities Act, the Rehabilitation
27  Act and the due process and equal protection clauses of the Unitéded
28  States Constitution, as applied to the State of California through the
   14th Amendment to the Constitution and a violation of Title 42 U.S.C.
   §1983 and §1985.  Therefore, the San Francisco Division is the proper

1  venue for this attion, since a substantial part of the events or ommissions

2  which give rise to the claim, occured in San Francisco County, California.

3  3. All of the actions or inactions of the different defendants in this

4  matter are substantially intertwined together, in many cases as to

5  liability, and in all cases as to the nature, cause and forseeability

6  of plaintiff's damages. Plaintiff's medical care and treatment are

7  and will continue to be in San Francisco, Califorina. While some of the

8  different causes of action are different sorts of actions than some of

9  the others, and not every cause of action applies to each defendant, the

10  damages are the same as to each cause of action and could not be

11  distributed or separated, in any meaningful way without a single trial

12  on the merits.

13  ]

14  4. While unecessary for "federal question" jurisdiction, most of the

15  defendants are doing business in city and county of San Francisco.

16  5. Most of plaintiffs causes of action did not accrue until certain

17  criminal charges, described herein, were dismissed, in December of 2004,

18  all causes of action are filed prior the the expiration of the applicable

19  statute of limitations, since plaintiff was disabled and unable to file

20  the chargesd sooner. Additionally, the statute is further tolled by

21  a previous filing in San Francisco Superior Court, case number CGC-06-450766.

22  Plaintiff hereby gives notice of pending related action prususnt to

23  Civil L.R. 3-13. The previous filing is substantially similar to

24  this case and the proceedings should be coordinated to avoid conflicts,

25  conserve resources and promote an efficient determination of the action.

26  Plaintiff's damages in this case include the very disability that

27  caused plaintiff to be diabled to such a degree that he could not file

Complaint                                    Page 1 (ba).

I.

CIVIL RIGHTS VIOLATIONS OF DUE
PROCESS OF LAW AND EQUAL PROTECT FOR
EGTION FOR UNLAWFUL TAKING
AGIANST STATE BAR OF CALIFORNIA
AND THE BAR DEFENDANTS

31.   This is a civil action seeking damages agianst defendants for

committing acts under color of law, which deprived plaintiff of

rights secured under the Constitution and laws of the United States

for conspiring for the purpose of obstructing and hindering the

due course of justice, with intent to deny plaintiff due process

of law and equil protection of laws' and for refusing and failingf

to to prevent such deprivations and denials to plaintiff.

32.   Does 16-40 Robert Driscal, Defendant Bar, and defendant

Lawyers Assistance Program had a duty to supply plaintiff with

assistance and arrange for outside psychiatric assistance for

plaintiff, at all times mention herein;

33.   From approximately October of 2003- August of 2006, plaintiff

sought treatment, and assistance for Lawyer's Assistance Program

and Bar for psychologic illnesses that resulted for the events

folling an accidental house fire at plaintiffs residence.

34.   Defendants Bar, L.A.P., Does 36-60, and defendant Robert

Driscal, while having a duty to do so and while innitially beg-

ginning to provide this care and assistance, abrubtly withdrew the

care and left plaintiff, who had no other resourses completely

without assistance or treatments for serious mental illness.

This was done without due process of law and in violation of hte

equil protection clause with no hearing or other review amounting to

due process or opportunity for plaintiff to be heard in regard to

the denial of the services plaintiff was entitled to by mem-

bership and payment of dues in the Bar and by the laws of the

1  State of California.

2  35.  As a result of this taking without due process of law,

3  defendant suffered delay in diagnosis and treatment of a serious

4  mental illness, which set in motion a serious of proximately

5  caused events, including homelessness, loss of plaintiffs profession

6  and business, loss of earnings and earning capacity and severe

7  emotional distress.

8  36.  As a result of their concerted unlawful and malicious actions

9  and inactions, derendants intentionally, or with ddeliberate

10  indifference, reckless and callous disregard, deprived plaintiff of

11  the to equil protection of the laws and also impeded the due

12  course of justice in violation of the Fifth and Fourteenth Amendment

13  of hte Constitution of the united States and of  Title 42 U.S.C

14  §1983.

15

16                              II.
                    VIOLATIONS OF THE AMERICANS
17                  WITH DISABILITIES ACT AND
                    REHABILITATION ACT AGAINST BAR DEF.
18

19  37.  Plaintiff incorporates the allegations in the first cause of

20  action herein.

21  38.  Defendants failed and refused to accomondate plaintiff and

22  wrongfully failed and refused to accomondate plaintiff and wrongfully

23  refused to provide servises ot plaintiff because of his disability.

24  39.  There was no reasonable grounds for the defendants action to

25  breach their duty to plaintiff.

26  40.  As a result of the breach of duty the Bar defendants deprived

27  plaintiff of his property rights without due process of law

28  and deprived him of employment rights without due process of

of law and deprived him of equal protection of the laws, in

violation of Equal Protection of the laws, in violation of

the Fifth and and Fourth Amendment to the United States Constitution

and the Constitution of the State of California, the Americans

with Disabilities Act the Rehabilitation Act and the statutes and

laws of the State of California.

### III.

CLASS ACTION AGIANST BAR DEFENDANTS
FOR UNLAWFUL DISIPLINE, ACTIONS
WITHOUT JURISDICTION AND PROCEEDURES
POLICIES, RULES AND CUSTOMS THAT
ARE IN VIOLATION OF THE AMERICANS
WITH DISABILITIES ACT THE REHABILITA-
TION ACT,  TITLE 42 U.S.C. §1983 AND
THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED
STATES OF AMERICA

41   This is an action agianst the Bar defendants for declaratory

and injunctive relief and damages for violations of the United

States Constitution and other Federal Laws.  Plaintiff sues indi-

vidually and on behalf of all others similarly situated, seeks

a declaration that the actions of the Bar defendants in innitiating

and continuing prosecution of members who are disabled by

mental illnesses that prevent them from participation in their

defense in a meaningful way are unlawful and Unconstitutional

both on their face and as applied.  Instead of providing such

members with due process of law, the Bar proceeds to disbar and

otherwise disipline members who are even less accomondated than

persons with physical disibilities in violation of the  equal

protection clause of the United States and California Constitutions.

such actions are also a violation of the American Disabilities

Act and the Rehabilitation Act,

of the Americans with Disibilities Act, Rehabilitation Act and the
Equal protection Clause and the Due Process Clause and the
Fourteenth Amendment to the United States Constitution as well
as 42 U.S.C. §1983.

4.  For a Preliminary and permanant injuction regarding the Bar's
action in suspending, disbaring and otherwise disiplining
mentally disabled persons who cannot, because of the disability
and its associated conditions, meaningfully participate in their
defense and/or because of the mental disability have not been
personally served with process at a time when they were competent
to understand the nature of the proceedings or what action is
required to prevent a disbarrment in their absence and without
their imput.

5.  Mandate the Bar to provide reasonable adcomondations to
mentally disabled members in the area of Bar disipline, so that
these members to not suffer default Bar disipline, once it be-
comes reasonably clear that the mental disability itself may
be disabling the member from participating in a meaningful way,

6.  Mandate the Bar to provide a less restictive protection for
the public than default disbarrment for these mentally disabled
members, whos disability is causing non-participation in the
proceedings, such as simply placing them on involuntary inactive
status until the court can hold a hearing, with the manditory
appointment of counsel to protect the interest of the disabled
non participant member, to determing whether to maintain the
inactive status or, upon a finding that the member is, in fact,
competent to proceed in a meningful way, whether to proceed
with the disiplinary proceeding.

1   meaningful way.

2   D.   A hearing in which the vurden of proof is on the Bar defendants

3   to show a violation has occurred that takes into consideration, the

4   disability and accomondates it, rather than forcing default disbarrments

5   through as quickly as possible, leaving the disabled member unable to

6   return to the practice of law, once his condition allows him to do so.

7   E.   A fair and imparcial decision that includes the presentation of

8

9   evidence form the defense so that the matter is actually litigated or

  some waiver of a hearing knowingly made by the member at a time when

10   he as competant to do so.

11   72.   A return of plaintiff to the practice of law will not remedy

12

13   the effects of this pattern which is likely and capable of repetedly

14   reoccurring in the future. Such absentee disapline has occured in the

15   past and will continue to occur in the future.

16   73.   As a result of the aforementioned actions of the Bar defendants,

17   plaintiff and members of plaintiff's class have sufferred severe

18   emotional distress, loss of earnings and earning capacity, loss of

19   profession, loss of reputation, property damages and other special

20   and general damages.

21   74.   For this cause of action, plaintiffs pray damages and other

22   remidies as follows:

23

24      1.   For the reversal of all Bar actions that were without personal

     jurisdiction on the member, at a time when the member was mentally

25      competant and able to react to the service.

26

27      2.   For a declaration that the BAr fules and regulations and State

28      Statutes pertaining to the disipline of mentally disabled persons is

     unconstitutional and foid on their faces and/or as applied.

     3.   For a declaration that the State Bar Rules and Statutes

     pertaining to disipline of mentally disabled persons are in violation

inactive status, is not in keeping with modern thinking and is in
clear violation of federal law.

70.   The Bar's provision that requires the mentally incompetent person
to comply with complicated motion proceedings, appoint counsel only if
the mentally disabled person has the wherewithall to prepare and pre-
sent a Motion for Appointment of Counsel having somewhere learned
about the possibility of getting counsel appointed since the Bar
fails to so advise, and to complay with technical rules pertaining
to having the matter held in abbayance upon formal motion, psychiatric
evaluation and contested hearing is totally meaningless to the dis-
abled to the mentally disablied person, since the root of the
problem is that these persons can not and do not participate in any
part of their defense in any meaningful was and therefore, compliance
with these requirements is completely impossible for such persons.

71.   Defendants (Bar) are engaged in a widespread pattern
of lon-term suspensions and disbarrments and defamations of members
of the State Bar without:

A.   Reasonable rules pertaining to proper proceedures for the mentally
disabled.

B.   Notice of charges and opportunity to be heard that is meaningful.

C.   Balancing the need to protect the public with the need of the
disabled person to be free from disability related disability, where
the less severe proceedure of placing such persons on involuntary
inactive status rather that disbarring them, once the Bar defendants
become aware that mental disability and more particularily the
member appears reasonably likley to be suffering form a mental disability
that, in fact, disables him from participation in his defense in a

the Equal Protection Clause and the Due Process clauses therein.

68.   The above mentioned violations are also in part a result

of the Bar defendant's falure to make accomondations to the persons

who are mentally disabled and whom, because of the disability can

not and do no participate and many times are not aware of the

proceedings either because of a lack of personal service on them,

because of their inability to react to service because of incarceration

or homelessness caused by the mental illness, or because once service

is actually made, they are not able to appreciate and understand the

nature or importance of the proceeding and its consequences because

of a mental disability.  Furthermore, because of current policies and

proceedures of the Bar defendants regarding mental illness, mentally

disabled persons are subject to default disbarrments without personal

jursidiction in their absence.

69.   Plaintiff class members are presently being subjected to a

denial of fundimental civil reghts for which there is no adequite

remidy at law, in that they are presentoy being denied the right

to engage in gainful employment by the combination of the Bar defendents

unconstitutional conduct in violation of Americans with Disabilities

Act and the discrimifiatory provisions of the State Bar with

respect to the allowable legal employment available to a disbarred or

suspended mentally disabled person who 's condition has improved to the

point where the member is capable of engaging in the practice of law.

In other words, because of their disability and the Bar's conduct to-

wards it, they are effectively precluded from any real possibility

of employment.  The Bar's conduct in disbarring these disabled persons,

rather than placing them on involuntary or in some cases  ivoluntary

sequences of these charges and proceedings.

E.   Actual notice of the fact that their non-participation

will result in their disbarrment, at a time when they

are not able to appreciate the suggnificance of such

a matter because of their mental disability.

65.   The disiplines of plaintiff and members of plaintiff's class

were imposed pursuant to rules approved, ratified, and formed

by custom by supervisors of the Bar defendants and by the Board

of Governers under B. & P. Code §6076, which provides that "***

the Board of Governors may fromulate and enforce rules of professional

conduct for all members of the Of the Bar in the State."

66.   This rule, policy and proceedure making authority would include

the formation of policy and proceedure for the action to be taken by

the State Bar in regard to protection of the rights of mentally

disabled members, unable to defend themselves or to participate in

their defense when the BAr has actual or constructive knowledge through

their agents and employees or from any other reasonable sourse

of the members disability imposed inablilty imposed inability to

participate in their defense in a meaningful way.

67.  The  Defendants action to disbar, suspend and otherwise disibpline

persons who are mentally unable to participate in their defense because

of mental disability, do not receive actual and meaningful notine of

the proceedings, whethereby incarceration, hospitalization, homlessness

or other disability related unavailability, or for other reasons

related to mental disability, are simply not able to participate in

their defense is in violation of the American's with Disibilities Act,

Title II, Section 504 of the Rehabilitation Act of 1973, the Fourteenth

Amendment to the Constitution of the United States of America and

1   to completely ignore and disregard clear evidence, and fail to

2   accomondate the disability of such members.

3   62.   The policies and proceedures and customs of the Bar defendants

4   provided the employees and agents of the Bar with no choice but

5   to proceed with disiplining the mentally disabled on the unsubstantiated

6   claims of clients, and in some cases, even aiding and abbetting the

7   frauds

8   Erauds to the State Bar's Client Secutity Fund, which acts as

9   a further barrier to re-entry by these disabled members.

10  63.   In some cases the Bars zeel to trample the rights of these

11  members is so extream that they cause the disabled person to be

12  wrongfully prosecuted for crimes that were not crimes at all,

13  which further punished and humiliated these disabled members and

14  caused them to be incarcerated in conditions that were reasonably

15  calculated to aggrivate the members disability.

16  64.   Simply because these members were suffering from a mental dis-

17  ability, through no fault of their own,  they were not given;

18       A.   Adiquite notice and opportunity to be heard.

19       B.   Reasonable opportunity to prepare for a hearing on

20            these charges agianst them.

21       C.   A hearing at which the burden of proof was on the State

22            Bar prosecutors, to show that plaintiff had violated the

23            Rules of The State Bar.

24       D.   Notice of a promulgated rule upon which the charges

25            were based, that makes reasonable accomondation for mentally

26            members so that they can be reasonably assured to recieve

27            actual notice of the proceedings at a time when they have

28            the presence of mind to appreciate the nature and con-

is fair and reasonable.

58.  ON or about June 30, 2006, plaintiff was disbarred by the Bar. This resulted from a series of proceedings that occured during a time when plaintiff was incarcerated, mentally disabled, homeless and completely unable to participate in any Bar proceedings. Plaintiff did not know he was entitled to appointed counsel and was never advised of his right to counsel by any Bar defendant, or anyone else.

59.  The Bar had actual and constructive knowledge of the plaintiff's mental illness and disability was so severe that it actually Prevented plaintiffs from participating in their defense and plaintiff and plaintiff's class were disiplined because of their mental illness and disability and punished and subject to public huminliation because of their mental disability.

60.  The Bar defendants disiplined, punished and disparaged plaintiff and members of plaintiff's class by defaulting these members suffering from mental disablility in their absense and publishing the sweeping false, sweeping and inflamitory allegations of the complaints of clients, and the allegations of the complaint of the Bar, as if each and every one of the allegations were fact. The Bar prosecutors and staff of the Chief Disiplinary Counsel were able to do this because the policies, procedures, rules, regulations and customs required, allowed, permitted and encouraged these employees charged with the administration of justice within the Bar disiplinary system to engage in a systematic scheme of disbaring mentally hadicapped, disabled and mentally incompetant members, in their absence, which absence was directly and unavoidably cause by their disability alone.

61.  The Bar defendants were also caused by policy, rule and proceedure,

L.   Design Bar prosecution proceedures that consider and accomondate
the fact that seriously mentally diabled members by definition,
will universally be uable to defend themselves agaiast Bar
proceedings, in conformity with the dictates of the Americans
with disabilities Act, the Rehabilitation Act and the Constitutions
of California and the United States of America.
Strict compliance with complicated rules that require the mentally
disabled member to file a motion and argue thay they are mentally
disabled and unable to participate in their defense would be
impossible for this group of members.  In many cases, the mentally
ill person does not even recognize that they have a mental illness.
55.  The class is so numerous that that joinder of all members
is impracticable; There are numerous questions of law and facts
common to the class; the representative parties are typical of
the claims of the class; the representative parties will fairly
and adiquatly  protect the interests of the class .  IN addition,
the defendants and their agents have acted on grounds gererally
applicable to the class, making appropriate declaratory and
injunctive relief with respect to the class as a whole.
56.  The Bar defendants are charged with the responsibility of
administration of the disapline and making policies, proceedures
and customs.  They are charged with the responsibility of administration
of the Bar and are empowered with the power to regulate the practice
of law and to disipline attorneys.
57.  Defendant Doe 50 is the chief administrative officer of the
State Bar of California and is responsible for the administration
of the Bar and overseeing the disipline system in a manner that

or Lap) that the member being prosecuted is suffering from a
mental illness.

G.   Provide some type of hearing to determine the condition
and ability or inability of the member, with opportunity to
be heard, to terminate the stay once the Bar or member alleges
that the member is, in in fact, able to participate in the
defense of the prosecution in a meaningful was.
]
H.   Promulgate rules that specifically accomondate the special
difficulties and imparments of members who, because of serious
mental illness are in a condition that makes it either impossible
or impracticaple for them to comprehend and appreciate what
is required of them, for them to halt or stay proceedings
and actions of the State Bar.

I.   Automatically appointing counsel to unrepresented mentally
diabled persons, once comes to the Bsr's attention that the
member being prosecuted mighnt be mentally disabled.

J.   Stay proceedings until the member charged with Bar violations
is present, since the proceedings are quazzi criminal in nature.

K.   Promulgate rules, regulations, ponicies and proceedures that
balace the irreperable harm to the disabled member who would be
the subject of default disbarment with the harm that mighnt
possibly result to members of the publit, if absent and un-
represented members, especially those who the bar has reason
to suspect are mentally disabled and unable to meaningfully par-
ticipate in their defense, were simply put on automatic in-
voluntary inactive status until such time as they were present
and mentally compatant to stand trial.

54. Plaintiffs bring this action individually and on behalf
of all other persons who have been or will be suspended, disbarred
or otherwise disiplined by the State Bar of California under the
rules and statutes complained of herein without:

A.   Adequite notice of them.

B.   A reasonable opportunity to prepare for a hearing on the
State Bar of California's charges.

C.   A hearing and fair, impartial decision on the charges, con-
ducted at a time when the member is capable of defending him/
herself.,

D.   The Bar engaging in an invidious discrimination agianst
mental disability in violation of the Americans with disabilites
Act, resulting from the adoption of a rule regarding the
accomondation of the mentally disabled that would be almost
universally impossible for them to comply with as a direct
result of their disablilty.

E.   A custom and/or rule that specifically adresses the obvious
and certain needs of the mentally disabled, so that the State
Bar's prosecution of the disabled member is stayed pending
his return to a level of competance or adequite improvement
in his condition to allow him or her to meaningfully particiate
in their defense.

F.   A custom or rule that permits and mandates the Bar's employees
to halt a prosecution once it becomes reasonable apparant to
the Bar prosecutorial, investigative or mental illness treatment
arm of the Bar (Lawyers Assistance Program, also known as L.A.P.
or Lap) that

able suspensions and disbarments, as well as invidious discriminatoins,
and blatant violations of Federal law, are tossed aside by the
Bar defendants in favor of summary proceedings that result in
disbarment.

50.  These violations are particularly harmful to disabled persons,
since many would be unable to work to support themselves and their
families once their license has been lost to the Unconstitutional
proceedures, because of their history and/or because of the dis-
ability itself.  Yet, once sufficiently recovered or accomondated,
these persons suffering the disability through no fault of their
own, would be able to return to the practice of law in some
meaningful capacity.

51.  Defendants know or have reason to know that most mental dis-
abilities resulting from mental illness, including trama related
brain damage, can be sufficiently treated and/or medicated suf-
ficiently to render the patient able to return to the practice of
law.

52.  Declaritory relief is authorized by State law and by 28 U.S.C.
§1343 and §1344.

53.  The named plaintiff is an attorney without prior public dis-
ipline, who has suffered brain injury and Post Tramatic Stress
Syndrome superimposed on pre-existing Attention Deficit Disorder.
The Bar defendents were fully aware of these disabilities and
the fact that plaintiff was sufficiently disabled that he was
summarily given Social Security Disability, without even a hearing
on the matter, and proceeded to disbar him by default and allow
the disbarrment to become final in the face of such knowledge.

47.  In many cases the Bar does not have personal juristiction
over these members because they either did not get personal
service, or they were so disabled that they did not understand
the nature of the proceedings or their potential consequence.
In such cases the service, if any, is worthless in terms of
giving actual notice and opportunity to be heard.  Many times
the member will be incarcerated in some type of institution or
hosbital, homeless or otherwise lost the outside world and com-
pletely helpless to provide for themselves, let alone comply
with complicated proceedural rules pertaining to giving notice
to the Bar that they are mentally disabled.

48.  The Bar even fails to reasonably accomondate these mentally
disabled members by holding prosecutorial proceedings in abeyance,
in case they are able to later explain, mitigate or justify or
even completly repudiate the charges  that they by percentage
alone, are probabley not culpable regarding.  This occurs when
the Bar has Actual Notice that the member is mentally disabled and
completely unable to participate meaningfully in the proceedings.
In most cases, the member is completely unaware of even the dates
   and the nature of the proceedings.

49.  There are no acceptable and lawful proceedures,
                       to provide the mentally disabled person with
reasonable accomondations.  A proper hearing and notice pursuant
to published and unpublished rules and reguations is absent,
so the plaintiff's rights to proceedural due process of the
laws guaranteed by the Fourteenth Amendment to the United States
Constitution, and the right to be free from arbitrary ane unreason-

The State Bar of California     makes no adequite provision for
accomondation of persons with a mental disability in that the
only provision they have causes employees of the Bar defendants to
prosecute mentally disabled persons, even though the Bar knows or
has reason to know that the member is unable to defend themselves
in any way. The provision is unconstitutional as applied to mentally
disabled members, because such a disability effects the members
mental facalties to such a degree that they cannot comply with the
Motion proceeding requirements to cause the proceedings to be
suspended.

43.  The matter is further compounded by the fact that the Bar
does not advise unrepresented members or thier right to appointment
of counsel, if they cannot afford counsel.

44.  The current Bar proceedure allows such members to be disbarred
on unsubstantiated claims of their clients, with inadequite
investigation, by default, and on many occations without adequite
notice to the suffering and disabled member.

45.  If and when the member recovers sufficiently to discover that
they have been disbarred in their absence, while totally disabled
by their illness, the Bar makes no proceedures to reinstate them,
or even to retract the false and defamitory Orders that are pub-
lished, completly without the members knowledge.

46.  The Bar knows that over 95% of complaints of clients about
their attorneys are without merit, yet continues this invidious
discrimination agianst members with a mental disability by disbarring
them by default on the unsubstantiated complaints of clients,
with not imput from member whatsoever.

C.   Crawford and Company and Safeco caused Doe 21, a so called
"expert" to come all the way to San Diego to inspect the
fire at plaintiffs home and form an opinion that the fire
was caused by fire.

D.   Doe 21, with Crawford's and Safeco's full knowledge and
consent used "junk science" techneques, which is an outdated
and widely discredited by the scientific community.

E.   Doe 21 was brought up from San Diego because Crawford and
Safeco, knew from past experience with Doe 21, that they could
count on him to give them a opinion that the fire was caused
by arson, which it clsearly was not.

F.   Doe 21's function was to use this easily manipulable "junk
fire science" to intentionally or grossly recklessly, give
an opinion that the fire was caused by arson, either knowing
or failing to discover the fire was not arson through
recklessness.

G.   It was both explictly and implicitly understood between
Safeco, Crawford and doe 21 that the fire would be decalred
Arson by the use of smoke and mirrors type of analysis and
opinions, with the fraudulent manipulation of the opinion
friendly "junk fire science".

H.   Safeco used the phony opinion of Doe 21 and hid behind it,
knowing full well it was of no imperical value, to support
their wrongful denial and refusal to negotiate with plaintiff
while plaintiff was being prosecuted largely as a result of
Doe 21s secret meeting with investigator Don McAlpine and

**VIII.**
INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS BY ALL DEFENDANTS, EXCEPT PUBLIC ENTITIES

129.  Each of the defendants is the agent and or employee of each of
the other defendants, and in doing the acts commplained of herein,
was acting in the course and scope of the agency and employment.

130.  Each of the defendants intended or recklessly and grossly recklessly
caused plaintiff to suffer severe emotional distress and injury
to his mind and body, including, but not limited to the following:

A.  Post tramatic Stress Disorder/ severe .

B.  The acts of defendants caused plaintiff to suffer severly aggrevated
Attention Deficet Disorder.

C.  Stress and mental anguish associated with the defendants conduct
in regard to the events surrounding the fire at plaintiffs home, in-
cluding homelessness.

131,  The conduct of defendants was extream and outragious and was in
deliberate indifference and conscious disregard of the rights of
plaintiff, and with an intent to vex, annoy or injure the plaintiff.
Some of the Outragious and extream conduct of the defendants is
as follows:

    a.  Crawford and Company conducted a wholly reckless and
        intentionally false investigation of the fire at plaintiff's
        home, and incorrectly concluded that the fire was caused by
        arson.

    B.  Crawford and Company and Doe 21, invited and allowed a
        City of Fresno Fire Investigator to unlawfully enter plaitiff's
        home and conduct investigations, testing, consulting and
        searching of plaitiff's home in voilation of plaintiff's
        constitutional rights and without plaintiffs permission.

Plaintiff hereby incorporates each and every material allegation
in his sixth cause of action as though fully set forth herein.

125. Additionally, defendants stack questionable additional
charges and stretch the imagination in the filing of these
charges so that persons are intenionally terrorized and forced into
guilty pleas wrongfully, at a time when they are not guilty of any
offense.

126. This use of the State's power agianst the individual is
excessive, unnecessary, colgs the courts calander with meritless
cases and causes overcrouding in county jails and State prisons
of California.

127. This violates the rights of plaintiffs ot due process of law
and unlawfully denies them of thier liberty.

128. It is supervisory policy, custom and supervision that causes
thess violations of people rights under the United States Constitution.

129. These acts are done intentionally and with deliberate indifference
and recklessly with an intent to vex, annoy or injure

130. As a result of such unconstituional policies, proceedures,
supervisions and customs, plaintiffs have been deprived of their
freedom, been wrongfully prosecuted, suffered property damage and
loss of earnings and earning capacity as well as injury to their
mind and body and severe emotional distress.

1   plaintiff suffered loss of liberty, severe emotional distress,

2   injuries to his mind and body and loss of earnings, earning

3   capacity and and property loss.

VII.  VII.
### SEVENTH CAUSE OF ACTION AGIANST THE FRESNO DISTRICT ATTORNEY'S OFFICE FOR SUPERVISORY LIABILITY FOR CONSTITUTIONAL VIOLARTONSS AS A CLASS ACTION.

122.  Plaintiff birngs this action individually and on behalf

of all persons who have been or will be arrested, charged and/or

prosecuted falsely or wrongfully by the Fresno District Attorney's

Office and/or other D. A. defendants.

123.  The class of such persons is so numerous that joinder of all

members is impracitcal; there are questions of law and fact common

to the class; the claims of the representative parties are

typical of hte claims of the class; therepresentative parties

will fairly and adequately protect the interests of the class.

In addition, the defendants and their agents have acted on the

grounds generally applicable to the class thereby making appropriate

the findings in this case and relief granted with respect to the class

as a whole.

124.  IN each of the allegations that defendants acted wrongfully,

towards plaintiff, almost identical actions were committed by

defendants whethere directly or through agents to prosecute persons

without probible cause and by conducting reckless and incompetant

investigation and evaluations of cases prior to filing suit, thereby

subjecting persons to arrest, incarceration and prosecution without

probable cause and to prevent pre-trial release on honor of these

persons so that they will ultimately be forced to plead guilty to the

charges they did not commit all of which is done wrongfully.

subordinates in their duties and activities from:  1.  Unlawfully and

maliciously harassing a citizen woh was acting in accordance with

his constiturional and statutory rights, priviledges and immunities

;  2. Unlawfully and maliciously arresting, imprisoning and prosecuting

defrauding and terrorizing citizens whether arrest was lawful

of unlawful; 3.  conspiring to violate the rights, privileges

and immunities guaranteed to plaintiff by the Constitution of hte

United States and laws of the State of California; and 4.  Otherwise

depriving plaintiff of his constitutional rights, priviledges and

immunities.

119.  The Defendants Elizibent Egan, the Fire Defendants, the

D. A. defendants, Does 7-10, 11-15, 75-80 and 81-85 and Doe 21

had knowledge or had they diligently exercised their duties

to instruct, supervise, control and disipline on a continuing

basis, should have known that the wrongs  conspired to be

done, as hereinbefore alleged, were about to be committed.

Defendats supervisors and public entities, directly or indirectly

under the entity approved, ratified or adopted by custom under

color of state law directly and foreseeabley caused the unlawful,

malicious, reckless and wanton conduct of the subordanants, including

but not limited to the deputy D.A,s and fire investigators hereinbefore

described.

120.  The acts of defendants and each of them were done intentionally

and/or recklessly in deliverate indifference and conscious disregard

to the rights of plaintiff with an intent to vex, annoy or injure the

plaintiff.

121.  As a direct and proximate result of the acts of defendants,

1    earning capacity and injuries to his mind and body.

2                              VI.
3                SIXTH CAUSE OF ACTION FOR SUPERVISORY
                 LIABILITY FOR CONSTITUTIONAL VIOLATIONS
4                AGIANST FIRE DEFENDANTS AND D. A. DE-
                 FENDANTS.
5
6    114.  Plaintiff incouporates by reference each of the other

7    material alligations in this complaint hereinbefor stated

8    by reference.

9    115.  The acts herein befor mentioned resulted from the action

10   of persons in comformance with policies and customs of their employers

11   or principals.

12   116.  At all times herein mentioned, defendant Don McAlpine and

13   Does 1-3, as fire investigators of the Fresno City fire Department

14   and the District Attorney defendants were acting under color of

15   state law.  Does 1-3 were acting under the direction  of defendants

16   7-10 and/or Does 11-15 and defendants 75-80 were under the advise

17   and direction of other Doe supervisors and policy makers, including

18   Elizabeth Egan and the other supervisors for the Fresno County

19   Bistrict Attorney's Office.

20   117.  Does 81-85 were and are policy and rule makers for the Fresno

21   County District Attorney's Office and fully ratified thte acts of

22   the other defendants herein.

23
24   118.  Acting under color of law and pursuant to official policy

25   or custom, Defendants Elizibeth Egan and Does 7-10, 11-15, 75-80

26   Does 81-85, the Fresno Fire Defendants and the D. A. defendants and

27   Doe 21 knowingly, recklessly, or with diliberate indifference,

28   and callous disregard of the rights of plaintiff rights, failed  to

     instruct, supervise and disipline on a continuing basis the

be charged with arson and insurance fraud. Plaintiff would be thereby delayed and deturred from filing an insurance claim agianst Safeco.

108. The charges for arson and insurance fraud were ultimately dismissed for an utter lack of evidence and because plaintiff had knowingly let his full coverage Farmer's Insurance Co. policy lapse, months before the fire.

109. Although plaintiff was prosecuted for over two years, the defendants were aware the entire time that plaintiff had no motive, since the Farmers policy had lapse and the Safeco policy was only a "forced policy" applied to the property by Option One and clearly inadequite to cover plaintiffs losses.

110. Plaintiff was transported to the Fresno County Jail where he was booked. He was incarcerated until he could post a large bond.

111. As a result of their unlawful action, defendants deprived plaintiff of his liberty without due process of law and deprived him of equal protection of the laws in violation of the Fifth and Forrteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

112. As a result of their conserted unlawful and malicious detention and confinement of plaintiff, defendants intentionally and with deliberate indifference and callous disregard of plaintiff's rights, deprived plaintiff of his liberty without due process of law or equil protection.

113. As a result of the unlawful action of defendants, plaintiff suffered ]
severe emotional distress, loss of property, loss of earnings and

101.  Also in furtherance of the conspiracy  the defendants falsely informed plaintiff that his home was destroyed by an intentional arson, causing plaintiff to fear for the safety of his family.

102.  The acts of the defendants were intentional and/or reckless, in conscious disregard and deliberate indifference to the rights of plaintiff and they were done with an intent to vex, annoy or injure the plaintiff and members of plaintiffs class.

103.  As a result of the actions of the defendants, plaintiff and the class members suffered severe emotional distress, loss of their property, loss of earnings and earning capacity, loss of their liberty and standing in the community, loss of the affections of their friends and families and injuries to their minds and bodies.

V.    V.
FIFTH CAUSE OF ACTION AGIANST FIRE
DEFENDANTS, INSURANCE DEFENDANTS
AND DOE 21 FOR VIOLATION OF DUE
PROCESS, UNLAWFUL WARRANTLESS AR-
REST AND PROSECUTION WIHTOUT PROB-
ABLE CAUSE

104.  Each of the defendants is the agent and/or employee of each of the other defendants and in doing the acts herin, was acting in the course and scope of said agency and/or employment.

105.  Plaintiff's arrest in August of 2002 was warrantless and with-out probable cause.

106.  Neither at the time of the arrest nor at any other time was plain-tiff informed of the grounds for his arrest.

107.  The Insurance defendants and the Fire defendants, including doe 21 and Don McAlpine worked together to conceal evidence and produce false findings in regard to a accidental fire at Plaintiffs home so that it would be considered arson and plaintiff would

99.   The charges were dismissed by the court on the D. A. defendants
motion, after an admission of the fact that there was insufficent
evidence and no motive with which to prosecute the case.

100.   Some of the acts in furtherance of the conspiracy that
were done by defendants are as follows:

A.   The fire defendants conducted a reckless investigation
and left important evidence at the scene, concealing the nature of
the fire.

B.   The Insurance defendants conducted their own reckless
investigation to support and coordinate a false of intentionally
reckless arson allegation.

C.   Safeco denied payment on the claim of plaintiff, knowing
there were no legitamate grounds to do so.

D.   Doe 21 used "junk science" to support the arson allegations
agianst plaintiff, knowing or recklessly failing to discover that
the methods he used were completly unreliable with no scientific
basis.

E.   The D. A. defendants also conducted a wholly reckless and
inadequite investigation and filed and prosecuted charges agianst
plaintiff before and without obtaining enough evidence to establish
probable cause, with full knowledge of the lack of suppport in
fact and logic or the false charges of  arson.

F.   The deed defendants broke into plaintiff's home without
cause or permission to allow the Fire defendants to conduct an
illegal search and seizure of plaintiffs home and contents without
a warrant.

98 (a).   The members of the group called Insurance defendants are
all agents and or employees of the other members of that group, and
in doing the acts complained of herein, were acting in the course
and scope of said agency and/or employments.

98 (b).   The members of the group called Deedrdefendadtsdanesadents all agents
and employees of the other members of that group, and in doing the
acts complained of herein, were acting in the cours and scope of said
agency and or employment.

98 (c).   The members of the group called Fire defendants are all agemts
and/or employees of the other members of that group and in doing the acts
complained of herein, were acting in the course and scope of said
agency and/or employment.

98 (d).   The members of the group called D. A. defendnats are all
agents and/or employees of the other members of that group and in doing
the acts complained of herein, were action in the course and scope of
said agency and or employment.

98 (e).   The Deed Defendants, the Fire defendants, the D. A. defendants
and the Insurance defendants as independant groups did not act as
agents of the other groups or any of the members of any of the other
group.

99 (f).   The members of each of these independant groups, in doing the
acts complained of herein, conspired with the members of the other
three groups and the members of each of the three groups did acts
in furtherance of the conspiracy as stated herein.

99 (g).   The insurance defendants, the Deed defendants, the D. A.
defendants and the Fire defendants all conspired together to do
the acts complained herein.

1   or wrongfully denied benifits under their fire policies by the

2   acts of any of the defendants a manner substantilly similar to the

3   manner described herein.

4   94.  The class of such persons is so numerous that joinder of all

5   members is impractical; there are questions of law and fact common

6   to the class; the claims of the representative partoes are typical of

7   the claims of the class; the representative parties will fairly anmd adequately

8   protect the interests of the class.  In addition, the defendants

9   and their agents have acted on grounds generally applicable to the

10  class thereby making appropriate the findings in this case and relief

11  granted with rewpect to the class as a whole.

12

13  95.  In each of the allegations that defendants acted wrongfully,

14  towards plaintiff, almost identical actions were committed by defendants

15  whether directly or through agents to claim accidental fires were

16  arson agianst others who are too numerous and varied to, as a

17  practical matter be joined into this action.

18  96.  On or about August 25, 2002, defendants caused plaintiff to be

19  arrested and charged and prosecuted wrongfully for arson and insurance

20  fraud without cause in frurherance of the afroementioned conspiracy.

21  97.  Defendants Don McAlpine and others bodily and physically

22  removed plaintiff from his location without need, or explaination

23  and transported him to the Fresno Police Station and caused him to be charged

24  and prosecuted by the other defendants in furtherance of the conspiracy.

25  98.  As a result, Plaintiff had to pay bail and appear in court

26  to fight a prosecution that was wholly without probable cause for a periód

27  of approximately two and one half years, whith the defendants knowledge

28  of or recklessly indiferent to validity of the cause and origin of the

    fire.

13.  For attorneys fees, costs and such other and further releif

that the court may deem just and proper.

IV.

FOURTH CAUSE OF ACTION AGIANST
THE INSURANCE DEDRNDANTS, THE
FIRE DEFENDANTS, THE DEED DE-
FENDANTS AND THE D. A. DEFEN-
DANTS FOR CONSPIRACY TO VIO-
LATE PLAINTIFF'S CIVIL RIGHTS
IN VIOLATION OF THE UNITED
STATES CONSTITUTION.

89.  From August 2002-December, 2004, Defendants conspired together

to violate Plaintiff's Constitutional rights by acts and agreements in

violation of 42 U.S.C. §1983 and for conspiring for the purpose of im-

peding and hindering the due course of  justice, whith the purpose

and intent to deny Plaintiff Equal Protection of laws; and

for refusing or neglecting to prevent such deprivations and denials

to Plaintiff.

90.  On or about August 15, 2002, plaintiff had an accidental  house

fire at his residence at 509 E. Mariner's Circle.

91.  The fire was investigated by the Fire defendants, the Insurance

defendants' and the D. A. defendants.

91.  At the time of each of these investigations, there was discovered

substantial evidence to exculpate plaintiff but this evidence was

intentionally or recklessly ignored and disregarded, in favor of

an arrest of Plaintiff for Arson and insurance fraud without

probable cause and prosecution  of plaintiff by the Defendants and

each of them.

92.  Plaintiff is informed and believes that the defendants had an

agreement whereby Doe 21 would give an unsupported opinion that the

the the accidental fire was arson, which opinion was false and

fraudulent.

93.  Plaintiff brings this action individually and on behalf of all

persons who have been or will be arrested, charged, falsely prosecuted

ated in or committed in an institution or hospital during any
material portion of the proceeings and unrepresented, or was
personally served with process while not able to respond in a
meaningful way toe the service because of a mental disability,
thatatherBar'seaction was in violation with the Americans with
Disabiltiies Act, preempted by Federal law and that the dis-
barments are invalid and reversed, because they are in violation
of 4th and Fourteenth Amendments and the due process and
Equal Protection Clauses of the Constitution of the United States
of America.

10. Mandate the Bar to adopt policy and proceedures for disiplinary
proceedings as to members who cannot participate in the proceedings
in a meaningful way, that are in compliance with the Americans
with Disabilities Act, the 4th and 14th Amendments, the Due
Process Clause and the Equal Protection Clause of the United
States Constitution and the like provisions and statutes of the
California Constitution and Codes, respectively.

11. Preliminarily and permanantly enjoin the defendants from
punishing, discriminating agianst, and disiplining individual
members of plaintiffs' class in any way for or by the actions
complained of herein.

12. Award actual and general damages in an amount in excess of
the jurisdictional minimums of this court and punitive damages
agianst the non-public entity defendants in an amount sufficent
to prevent the defendants from a repetition of the acts com-()
plained of herein and to detur others similarly situated from
engaging in similar unlawful conduct.

75-88. Reserved.

7.  Mandate the Bar to accomondate mentally disabled persons, by
drafting and adopting regulations that allow the State Bar
Count to use its discression to recommend that the Supreme
Court declare the disbarment void and remand the matter to
the State Bar Court for further proceedings, upon the post-
discipline motion of a member that was disiplined by default
without the assistance of counsel.  The member would be
provided with an opportunity to make a showing that the default
disipline was a direct result of the mental disability of the
member.  This would prevent the irreversable disbarrments by
default, without the imput of the member's participation, in
cases where the court finds that the cause of the non-participaiton
was the disability.

8.  Make a finding that the disipline that occured to members
in the past, after either no actual personal service was ever
made, because of the members mental disability or the service
was made on a member who was incapable of responding to the
process in a meningful way, as a direct result of the mental
disability, did not respond and suffered a disbarrment as a
result is null and void and that there was no jurisdiction to
make such a ruling.

9.  Make a finding and declaration that in a situation where
a member of the Bar has been disbarred by default becuase of
either no actual personal service becuase the member could
not be, or was not located because of an unavailability directly
caused by the disability, such as homelessness ( a condition
frequently suffered by the mentally disabled), or an was incar-

1  discover that the fire was accidental.

2  212. Doe 21 and hte insurance defendants persisted in the use of

3  "junk science", with no real basis in logic or scientific verification

4  because they could use smoke and mirrors type of analysis to convince

5  plaintiff and others that this accidental fire was arson.

6  213. Plaintiff, unaware that he was being tricked with "junk science"

7  was, in fact, terrorized by the viscious threat and subsequent prosecution.

8  214. Some of the terrorist acts that resulted in damages to plaintiff

9  were:

10      A.  Leaving the wire that clearly caused the fire at plaintiff's

11      home to be discarded by cleanup crews.

12      B.  Failing to even photograph the wire that caused the fire

13      of concealing the photograph form plaintiff.

14

15      C.  Failing to photograph the area of burn surrounding the

16      wire that caused the fire.

17      D.  Failing to consider important evidence, like the fact that

18      the accelerant sniffing dogs came up empty nosed.

19      E.  Failing to consider the fact that the carpet sent to the

20      laboratory was negative for any kind of accelerants and that

21      every single other test they conducted legally, failed to implicate

22      plaintiff.

23      F.  Completely ignoring the fact that plaintiff had no motive

24      to commit arson.

25      G.  Failing to conduct any testing of the electrical wiring

26      in plaintiff's home prior to forming the opinion that the fire

27      was arson.

28      H.  Using totally discredited "junk science".

1  to proof.

2  207.  The acts of defendants were done with conscious disregard and

3  deliberate indifference to plaintiff's rights and were done with an intent

4  or reckless disregard of hte fact that they were cerrain to vex, annoy

5  or injure plaintiff.

6                          XIVV?

7            EICHTEENTH CAUSE DF ACTION FOR TERRORIST
             THREAT AND DECIET AGIANST FIRE DEFEN-
8            DANTS, INSURANCE DEFENDANTS AND DOE
             21 AND DON McALPINE AND FOR OTHER
9            VIOLATIONS OF FEDERAL LAW.

10  208.  Plaintiff realleges the matieral allegations of the tenth

11  cause of action herein.

12  209.  Defendants Doe 21 and the Fire defendants acted with reckless

13  indifference and concious disregard of the rights of plaintiff, recklessy

14  negligently, and 'or with gross negligence, and in addition to the

15  Insurance defendants, conducted an investigation of the fire atd

16  plaintiff's home that occured in August of 2002, using "junk science"

17  207.  At the time of the investigation they performed these duties in

18  a manner as to arrive at a wholly incorrect conclusion about cause and

19  origin of the fire.

20  208.  He also convinced the unsuspecting plaintiff, who had no training

21  in fire science or engineering that the fire was a result of arson.

22  209.  Plaintiff, knowing he did not start any fires, feared for the

23  safety of his family.

24  210.  Only in December of 2004, did plaintiff learn that, in fact

25  the fire was accidental because he hired trained engineers and

26  reliable experts to determine cause and origin.

27  211.  Doe 21, the Fire defendants, the insurance and other Does all

28  made terrorist threats to the plaintiff that an arsonist had started

the fire in plaintiff's home, knowing or with recklessness f-11'

The Deed defendants contributed to the obstruction of justice
by providing and making public the private financial and
credit information of plaintiff.

F. The Insurance defendants, the D. A. defendnats and the Fire
defendants each conducted their own intentionally and recklessly
cursory and unreliable investigation to conceal the true cause
and origin of the fire so that plaintiff could be implicated
and prosecuted for arson and insurance fraud.

G. The Bar defendants unconstitutional action agianst plaintiff
without jurisdiction and in violation of the Americans with
Disabilities Act recklessly and intentionally obstructed justice
by illegally obtaining plaintiffs Bank records in violation
of the California Law and other violatins of plaintiffs rights.
The Bar defendants also ingaged in an invidious discrimination
baised on poverty and disability in violation of the Equil
Protection Clause of the United States Constitution.

H. Plaintiff was wrongfully prosecuted for arson by all defendants,
except the Bar defendants. Defendants had actual malice when
engaging in the acts that amounted to malicious prosecution of
the plaintiff.

205. Finally, in December of 2004, the matter was dismissed by the
by the Court because the D. A. admitted that he had insufficent evedence
and no motive. The entire prosecution lacked probable cause from
beginning to end.

206. As a direct and proximate result of the conduct of the defendants
plaintiff suffered severe emotional distress, denial of Due Process,
injury to his mind and body, loss of earnings, loss of earnings and
loss of earning capacity, gerneral damages and special damages according

* 151-197 rese.

## XIII

## OBSTRUCTION OF JUSTICE AGIANST
## ALL DEFENDANTS

1   294.  On or about August 15, 2002 to June 2006, the defendants and

2   each of them engaged in a course of conduct that intentionally and

3   recklessly was designed to and did obstruct justice as follows:

4       A.  The insurance defendants hired Doe 21, a so-called "cause

5       and origin" expert ot give an opinion that the fire at plaintiff's

6       home was arson without regard to whether it was true.

7       B.  Don McAlpine and the Fire defendants, Doe 21 included,

8       gave the opinion that the fire was arson either knowing it

9       was false or recklessly with deliberate indifference and conscious

10      disregard failing to discover that it was accidental by

11      closing their eyes  to and concealing exculpatory evidence.

12      C.  The Deed derendants, the Fire defendants, the Insurance

13      defendants and Doe 21 all participated in illegal searches of

14      plaintiff's home, as well as illegal testing and seizures

15      in  violation of Plaintiff's rights.

16      D.  The D.A. derendants knowingly used illegally obtained

17      evidence from the Insurance defendants, the Fire derendants, Doe 21

18      and Don McAlpine see.      from the illegal searches and seizures,

19      and from unlawful disclosures of the Deed defendants, and then

20      used it to unlawfully prosecute plaintiff with it.

21      E.  The D. A. defendants, the insurance defendnats, the fire

22      defendants and Doe 21 all intentionally and/or with reckless

23      disregard, used "junk science" to deny plaintiff of his property

24      and liberty without due process of law.  They obstructed justice

25      by using "junk science" of Doe 21 and Fire Defendants, known

26      or reasonably discoverable to be nonsense and little more

27      accurate that throwing a dart at a dartboard containing the

28      possible causes of any given fire.

F.   Conduction an intentionally or recklessly false investigation of the fire.

G.   Causing arson charges to be filed agianst plaintiff at a time when they knew or by reckless indifference, failed to discover that the fire was indeed accidental.

H.   Failing to deal wiht plaintiff in good faith.

I.   Causing illegal seardhes and seizures to take place in plaintiff's home.

J.   Conspiring with Option One to reveal priviledged information in violation of Federal and State "Right to Privacy" laws regarding plaintiff's financial affairs without a warrant or subpeona or other legal means.

K.   Providing false information to the defendant Fresno Fire Department.

L.   Aiding and abetting the defendant Fire defendants in violation plaintiff's constitutional rights to due process and equall protection under the law and causing plaintiff to be subjected to sutel cruel and unusual punishment.

200.   Safeco, when it issued the policyyof insurance, had no intention of paying any amount of any settlement to phaintiff.

201.   By so doing,.Safeco breached the implied covenant of good faith and fair dealing that is implied in every contract.aned

202.   The acts of defendant were intentional or in conscious disregard and calous and deliberate indifference to the rights of the plaintiffk

203.   Punitife damages should be awarded to punish defendants and to detur others from a repetition of this type of conduct.

[150-196 Reserved]

XII

## SAFECO FOR BAD FAITH BREACH OF INSURANCE CONTRACT

197.  Safeco Insurance Company had a policy of insurance for fire damage under which plaintiff was an insured under the policy in August of 2002.

198.  From August of 2002 to present, Safeco continually breached the contract in connection with an accidental fire plaintiff suffered at his home.

199.  Safeco breached the express terms under the contract and/or the implied covenant of good faith and fair dealing by:

   A.  Failing to negotiate with plaintiff to settle the fire damage claim.

   B.  Secretly negotianing with Option ONe Mortgage Company to steele the fire claim without plaintiff's knowledge or consent, even though plaintiff had repaired most of the fire damage.

   C.  Hiring a "fire expert" known to give false and/or reckless opinions by using "junk science" to bolster opinions that fires were arson, if an insurance company was the one who hired him, thereby helping the insurance company deny claims for fires, since arson is not covered by the policy.

   D.  Denying plaintiff's claims under the fire policy in bad faith by recklessly claiming the fire was arson, when it was an accidental.

   E.  Failing to pay plaintiff's reasonable demand once liability became reasonable clear in clear violation of the California Fair Claims Practices Act.

The defendants, and each of them clearly breached their duty
to avoid harm to persons who could be forseeably injured by their
conduct and by the nature of their conduct, plaintiff suffered
loss of his home, loss of the equity in his home, sever emotional
distress, injuries to his mind and body, loss of earnings and earning
capacity and medical expenses and disability.

150(a). The acts of the defendants were intentional and or reckless and
in conscious disregard of the rights of plaintiff and done with
an intention to vex, annoy or injure the plaintiff.

150(b). The acts of defendants were in violation of California Statutes
concerning real estate practices and defendants conduct under the
the law makes the defendants liable to plaintiff for treble damages.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

they had a duty ////////k to do so, by virtue of their
special relationship with plaintiff with plintiff and by the
Contract, contract documents and the duties created by their
secret settlement of the insurance p claim amount paid
of the fire damage claim at a time when plaintiff was known to
be an insured on the policy of insurance with Safeco and had
been the party responsible for payments of premiums to Safeco.

C. Defendants caused a false declaration to be filed with
the Federal Court intentionally, recklessly and negligently,
which formed the basis upon which the automatic stay was lifted,
enabling defendants to conduct the wrongful forclosure.

D. Failing to disclose to plaintiff that they had settled
the insurance claim on plaintiff's behalf, that the payment
under the settlement had brought the mortgage current, that
a date certain had been set for the sale, and that plaintiff
because of the fact that the mortgage, or payments under the
contract, had been brought current, was entitled to re-assume
the loan with no additional payment to the defendants.

148. As a result of the wrongful forclosure in violation of the
California Fair Real Estate Practices Act, plaintiff is entitled
to treble damages.

149 As a result of the worngful forclosure, defnedants suffered
loss of all the equity in his home and other damages.

150. As a result of the fraudulent conduct of the
defendants concerning the forclosure on plaintiffs home, and the
fraudulent and tourtous breaches by the defendants, plaintiff suffered
severe emotional distress, injuries to mind and body, homelessness,

others, in plaintiff's home, and thereby aiding and abbetting

City Investigators, in violating plaintiff's constitutional

rights and right to privacy under the U. S. and California

Constitutions.

I. The Deed defendants also allowed City Investigator, McAlpine

into plaintiffs home to conduct unconstitutional searches,

seizures and investigations and testing in plaintiff's home,

by breaking and entering plaintiffs home totally without plaintiffs

knowledge or consent.

J. The Deed defendants sold plaintiffs home on an undisclosed

date, at a time when the past due payments had been brought

current.

K./.The Safeco and the Option One, entered into/secret negotions

and a secret settlement, but concealed the fact that this

settlement had brought the plaintiffs payments current and

and concealed the date sent for the foreclosure of plaintiff's

home, so that plaintiff would be evicted from his home.

L. Using false declarations about the value of plaintiff's

fome to clause the court to lift the automatic stay for

the Deed defendants.

M. The other outragious conduct of the defendants hereinbefore

mentioned in this complaint./

132. As a result of the acts of defendants and the severe emotional

distress caused by the wrongful acts of defendants, plaintiff

suffered injury to his mind and body, medical expenses, loss of

liberty, homelessness, loss of plaintiffs profession and standing

in the community, loss of earnings and earning capacity

133.   In doing the acts complained of herein, the defenants were
acting in consciouls disregard and deliberate inddifference to the
rightseof plaintiff and wihteanenintent to vex, alloy or injure.

IX.
VIOLATION OF PLAINTIFF'S RIGHT TO
PRIVACY UNDER THE CALIFORNIA CON-
STITUTION AND FOR TREBLE DAMAGES

. . Plaintiff incorporates by reference each and every material
allegation of his Eighth Cause of Action as though fully set
forth herein.

134.   Plaintiff has a Right to Privacy guaranteed by the Constitution
of the State of Californina.

135.   All of the acts of defendants were conducted in California,
at a time when plaintiff was a citizen of California.

136.   The defendants had a duty to plaintiff to refrain from
invading upon plaintiff's privacy.

137.   The defendants did neglegently, recklessly, intentionally
and/or wrongfully invade. plaintiffs privacy by doing the acts of
the Eighth cause of action.

138.   Defendant Option One also additionally invaded plaintiff's
right to privacy by disclosing confidential financial information
to the Fire defendants, the insurance defendants, Con McAlpine,
Doe 21 and others, without plaintiff's knowledge or consent, in
violation of Federal Credit Practices laws and Privacy Laws, for
which plaintiff is entitled to treble damages, as well as the
California and United States rights to privacy guaranteed by the
State and Federal Constitution.

139.   As a direct and proximate result of the aforementioned acts of
defendants, plaintiff has suffered injury to his mind and body,

1  medical expenses, loss of earnings and earning capacity, homelessness,

2  property loss and severe emotional distress.

3  140.  The acts of the defendants that invaded plaintiffs privacy

4  are as follows:

5  A.  The deed defendants broke and entered plaintiff's home

6  illegally and allowed Fire investigators to enter plaintiff's

7  home with out plaintiff's knowledge or consent, and at a time

8  when they had no authority to do so.

9

10  B.  The Fire defendnats, entered plaintiff's home twice, conducting

11  illegal searches and seasures, once during a secret meeting with

12  Crawford adjusters and Doe 21, and once when the Deed defendants

13  illegally broke and entered plaintiff's home.

14  C.  Doe 21 and the Insurance defendants allowed the Fire defendants

15  and McAlpine to conduct illegal searches and seisures at plaintiff's

16  home durring a secret meeting at plaintiff's home.

17  D.  The Bar defendants disclosed confidential information to

18  the D. A. defendants with out a warrant or a subpeona, and

19  also in violation of their own rules.

20  E.  The D. A. defendants aded, abbetted and participated in the

21  illegal searches and seizures of the Fire defendants, above

22  mentioned.

23

24  F.  The Deed defendants disclosed confidential private, finantial

25  information to the Fire defendnats.

26  In doing the acts complained of herein the defendants acted in

27  conscious disregard of the rights of plaintiff and with the intention

28  to vex, annoy or injure the plaintiff.

X.
FRAUD AGIANST THE INSURANCE DEFEN
DANTS, THE DEED DEFENDANTS AND DOE
21

141.   Because of hte Unconstitutional and discriminatory prosecution

and arrest of plaintiff and the resultin defamatory and humiliating

press coverage that followed about plaintiff having been arrested

and charged with felony Arson and Insurance Fraud, plaintiff lost

the equity in the property.  (The charges were clearly false,

because plaintiff had knowingly allowed his insurance policy on

his home expire; this fact was not printed)

142   The Deed defendants and the Insurance defendants con-

spired and individually agreed to cheat plaintiff out of the

equity in his home and to prevent plaintiff from remaining in

the premisses, bringing the mortgage current and re-assuming the

loan on the property.

143.   In furtherance of the conspiracy and fraud, the Deed defendants

sold plaintiff's home on the courthouse steps, without notice to

plaintiff, and at a time when the mortgage had already been

brought current by a secret payment made, recommended, rationalized

and justified, or otherwise made more likely to occur, by the

wrongful and fraudulent actions of defendants, includint but not

limited to:

   A.   Fraudulently concealing the date for the sale from

   plaintiff, so that plaintiff would not discover that the

   mortgage was current, preventing plaintiff from keeping

   the home.

   B.   Making, participating in, concealing, supporting or

   sanctioning secret negotiations between Safeco and

Option One.

C.  Secreting, assisting, allowing, participating, ratifying
supporting or agreeing to and exicuting the secret setlement,
that brought the Option One current so that plaintiff would
be removed from his home and so that the Mortgage could be
wrongfully forclosed.

D. Selling plaintiff's home at a time when the mortgage had
been brought current.

E. Failing to advise plaintiff of the date set for the sale.

F. Filing a knowingly or recklessly false declaration in the
Federal Bankruptcy Court, to have the automatic stay lifted
on the sale of plaintiff's home.

G. Making incorrect investigative findings and conclusions
intentionally or recklessly so that plaintiff would be
charged with arson.

H. Failing to pay the proceeds of the Safeco policy, so that
plaintiff would be required to repair the home by himself
without any assistance fi om Safeco.

I. Other wrongful conduct as herinbefore mentioned.

144.  As a result of the false statements, opinions and concealments
plaintiff was denied benifits of the Safeco Policy, was denied
the opportunity of re-assuming the mortage, was forcefully re-
moved from his home by Unlawful Detainer, suffered severe emotional
distress, lost his home, suffered injuries and illnesses to his
mind and body, lost earnings and earning capacity and other
special and general damages.

1

2

3  145. Plaintiff relied on t.  statements and concealments reasonably,

4  and or reasonably acted or failed to take action to his detriment

5  as a result of the statements and or concealments.  Some of the

6  things plaintiff was caused to do or not do as a result of the

7  fraudulent conduct that defendants knew or should have known plaintiff

8  was to not attend the forced sale, not contest the false declaration

9  make by Option One and Premire, spend money to repair his home and

10  otherwise act in accordance with the concealments and false statements

11  to his detriment.

12  146 .The acts of defendants were intentional or in reckness in-

13  differance and concious disregard of rights of plaintiff and were

14  done with the intent to vex, annoy or injure the plaintiff.

15                              XI.

16                   WRONGFUL FORCLOSURE AND GROSS
                     NEGLIGENCE AGIANST DEED DEF-
17                   ENDANTS

18  147. The defendants began, prosecuted and completed forclosure pro-

19  ceedings agianst plaintiff's home ac a time when they knew or

20  should have known, but failed to discover through negligence  and

21  gross negligence and recklessness, they had no right to do so for

22  the following reasons:

23

24      A.  The mortgage was current and nothing was owed on it at the

25          time of the sale and Option One was the creditor on the

26          loan contract and Premier was the holder of the deed of trust,

27          at the time they forclosed the plaintiffs home.

28      B.  Acting as agents and or employees of each other, the defendants

            failed to give notice of the sale date to plaintiff, even though

Causing a chilling effect on plaintiffs 1st Amendments rights by

I.  Conducting secret meetings in plaintiffs home in violation

of plaintiff's right to be free from illegal search and siezure.

215.  As a direct and proximate result of teh terrorist threats

that were done with dileverate indiferance and conscious disregard

of plaintiff's rights, plaintiff suffered severe emotional distress,

injuries to his mind and body and other damages and losses.

XV.

VIOLATIONS OF THE CALIFORNIA
FAIR CLAIMS PRACTICES ACT
AGIANST SAFECO

216.  Safeco insured plaintiff's home on 509 Mariner's Circle for

fire damage and limited contents of $25,000.00.

217.  Defendant Safeco accepted premiums from plaintiff but had no

intention of paying any claims for fire damages as provided for in the

policy of insurance.

218.  Defendant failed to pay reasonable demeandes once liability became

reasonably clear and otherwise violated the Fair Claims Practices

Act as follows:

A.  Claiming plaintiff committed arson

B.  Making a secret settlement for less that plaintiff's

damages form the fire.

C.  Not disclosing any of the negotiation or settlement

to plaintiff, an insured under the contract.

D.  Aiding and abbeting defendant Option One in conducting a

wrongful forclosure of plaintiff's home.

E.  Causing Fire defendants to arrest plaintiff on false charges

by providing false information.

F.  Continually, from August 2002-prese nt

G.  Continually, from August of 2002 - present breaching the implied covenant of good faith and fair dealing implied in all contracts and doing so as a tortous breach by doing the things allged in this complaint.

H.  Failing and refusing to settle with plaintiff for his accidental fire, as required by the express terms of the contract.

I.  Fraudulently concealing the secret settlement with Option One.  To this day, plaintiff has been given no information regarding this alleged settlement.

J.  Maliciously porsecution plaintiff for arson and insurance fraud so that plaintiff would be discoraged from making a claim under the policy.

K.  Violating plaintiff's Constitutional rights as more particularly set forth herein.

219.  The defendants had actual malice agianst plaintiff in that plaintiff's history was that of a lawyer that sues insurance companies, after previously defending insurance companies, including Safeco.

220. This malice was further illustrated by the conduct of Safeco in using an expert in "junk science" to use smoke and mirrors type analysis to support their wrongful failure to deal with plaintiff.

221.  The plaintiff suffered severe emotional distress, loss of earnings and earnings capacity, property loss, injury to his mind and body and medical expenses as a direct and proxipate result of the wrongful conduct of defendant.

122.  The actions of defendants also constituted a falure to settle the case, once liability became reasonably clear, in violation of the Fair Claims Practices Act of California.

1  222.  In doing the acts complained of herein, defendants acted with

2  intentional and/or conscious disregard and deliberate indifference

3  towards the rights of plaintiff in an effort to vex, annoy or injure

4  the plaintiff.

5

6                                XVI,

7                    NEGLIGENCE AGIANST THE DEED
                     DEFENDANTS AND THE INSURANCE
8                    DEFENDANTS

9  223.  In doing the acts alleged herein, each of the defendants was

10 the agent and or employee of each of the other defendants and

11 was acting in the course and scope of said agency and or employment.

12 224.  The insurance defendants and the deed defendants had a duty

13 of due care to the Plaintiff by vurtue of their relationship with

14 plaintiff and by virture of their voluntary actions that were

15 negligent and grossly negligent, since once that undertake to

16

17 do an act that they know will put plaintff in the Zone of Danger

18 they owe a duty of due care.

19 225.  The insurance defendants wewe negligent and grossly negligent in

20 their selection of Doe 21, a known expert in "junk fire science" which

21 the insurance defendants knew or should have known was totally unreliable.

22 226.  Doe 21 was grossly negligent in his investigation by leaving and

23 ignoring important evidence and using methods he surely knew to be

24 outdated and widely repudiated by the scientific community as utter

25 nonsense.

26 227.  The Deed defendants were negligent in failing to discover that

27 thier secret settlement with Safeco brought the mortage balaqce current
   ]
28 prior to selling plaintiff's home.  They were also negligent in their

   falure to discover that the forclosure was not complete prior to allowing

1    the sale, their purchase of and evaluation of the policy with Safeco,

2    and their investigation and corresponding decision to allow investigators

3    into plaintiff's home prior to the sale of plaintiff's home.

4    228. As a combined result of the conduct of this and other negligent

5    conduct of the defendants, plaintiff suffered severe emotional distress,

6    mental anguish, pain and suffering and injuries to his mind and body

7    as well as property damage, loss and loss of earnings and earning

8    capacity.

9

10    229. The actions of defendants was grossly negligent and in conscious

11    disregard of the rights of plaintiff and done with an inten to vex

12    annoy or injure plaintiff.

13                    XVII.

14            TWENTY FIRST CAUSE FOR THE BAD

15              FAITH BREACH OF CONTRACT AGIANST
              THE DEED DEFENDANTS TORTOUS BREACH

16

17    230. A special relationship existed between the Deed defendants and

18    Plaintiff as a result of the Deed defendants giving financial advise

19    aqnd mortgage advise to plaintiff, as well as the fiduciary relationship]

20    that developed between the parties as a result of Defendants

21    assuming the role of "attorney in fact" of the plaintiff by negotiation

22    and settleing the insurance claim on plaintiff's behalf, with Safeco..

23    231. The defendants breached the written contract between the parties

24    that was in force as the times herein mentioned and was breached in

25    the following tortous ways:

26      A. Failing to givbe notice of the date set fo the foreclosure.

27      B. Secretly settling the forced insurance policy with Safeco.

28      C. Selling Plaintiff's home when the mortgage was current.

       D. Solidifying the fiduciary and special relationship with

       E. breaching the implied covenant of good faith and fair dealing.

232. The conduct of the defendants was intentional and/or reckless and in conscious disregard of the rights of plaintiff and was done with an intent to vex, annoy or injure the plaintiff.

233. As a result of the acts of defendants the plaintiff suffered loss of property, injury to his mind and body, medical espences, severe emotional distress, loss of his profession, loss of earnings and earning capacity and other damages.,

XVIII.

NINETEENTH CAUSE OF ACTION AGIANST DEED DEFENDANTS AN, SAFECO FOR CONVERSION.

234 Defendants had the proceeds of a settlement from a fire claim of plaintiff agianst Safeco.

235. Defendants Safeco wrongfully paid it to the Deed defendants.

236. The deed defendants converted it to their own use and violated their fiduciary duty created by acting as plaintiff's "attorney in fact".

237. As a result of the wrongfull conduct of the defendants, which was done intentionally or recklessly, in coinscious disregard of the rights of plaintiff, with an intent ot vex, annoy or injure the plaitiff, plaintiff suffered loss of his property and loss of use and well as severe emotiona; distress, inuries, loss of earnings and other damages.

238. Whenb Safeco was holding the proceeds of the settlement, it knew it was holding them on behalf of plaintiff, yet converted the funds to be used for the sole benefit of Option One, without even placing the plaintiff's name on the settlement check

239.   When the Deed defendants held the settlement amount, they knew or should have known the funds were being held for plaintiff's use and benifit, yet converted them to their own use, in secret.

240.   The Deed defendants also held the Deed to plaintiffs home in trust for plaintiff, at a time when the mortgage was current and converted the property to their own use unlawfully by selling the property.

241.   The acts of the defendants was intentional and was done in conscious disregard to the rights of plaintiff, and with an intent to vex, annoy and injure the plaintiff.

242-248. Reserved

XIX.
CONSTRUCTIVE TRUST AGIANST DEED
DEFENDANTS AND SAFECO INSURANCE

249.  Safeco and Option one made a settlement on the insurance

policy of Safeco, on behalf of plaintiff.

250.  The proceeds under the policy were, according to the agreement

between the plaintiff and Option One, be applied to repairs to

plaintifff's home.

251.  Safeco was required, under its agreement and policy of insurance,

to disperce the proceeds of any settlement to plaintiff, who was

responsible for and who paid the premiums under the policy.

252.  These contractual obligations created a constructive trust,

for the policy proceeds, once the claim was settled, between

253.  A constructive trust was formed between plaintff and Safeco,

upon the settlement of the claim.

254.  A constructive trust was formed between plaintiff and Option

One, upon the settlement of the claim.

255.  A constructive trust was created between Primier Trust Deed

Services Company and plaintiff, when the proceeds were applied

to the mortgage balance by Option One and Primier proceeded to

sell the property in such a manner that sale included the proceeds of

a policy of insurance settlement.

256.  This constructive trust was further created by repairs made by

plaintiff to the home that were necessitated by the fire damage

that was the subject matter of the settlement that occured, in secret,

between Option One and Safeco.

257.  Defendants settled the claim without even inquiring of plaintiff

about the cost of the repairs.

1   Instead of honoring the constructive trust, Safeco turned over teh

2   policy proceed to defendant, Option One, without placing plaintff's

3   name on the draft or otherwise protecting the money as trustee fform

4   the settlement funds for the benefit of plaintiff, an insurned under

5   the policy.

6   259.  Instead of honoring the constructive trust and working with

7   plaintiff, regarding the amounts expended to repair the property and/

8   or otherwise properly handling the funds, defendants (Deed), kept the

9   settlements, and the negotiotations, a secret from plaintiff, as did

10   Safeco.

11   260.  As a rsult of the breach of the constructive trust, plaintiff

12   suffered the loss of his property, loss of earnings and earning

13   capacity, injuries to his mind and body, as well as severe emotional

14   distress.

15   270.  In breaching the constructimve trust, the defendants' conduct

16   was intentional or reckless and in conscious disregard and deliberate

17   indifferece to the rights of plaintiff and done with the intent to

18   vex, annoy, or injure the plaintiff.   XIX,

19
20              VIOLATION OF FAIR REAL ESTATE PRACTICES ACT
                  AGAINST THE DEED BEFENDNATS, ONLY

21   271.  Plaintiff incorporates by reference herein, each of the material

22   allegations contained in his 8th, 14th, 15th and 17th cause of actions

23   agianst the Deed defnedants.

24   272.  In doing the acts oomplained of, defendants violated the Fair

25   Real Estate Practices Act.

26
27   273.  AS a result of this conduct by the Deed defendants, plaintiff

28   suffered loss of his property and the equitity therein, homelessness,

     lost earnings and earning capacity and severe emotional distress for

     whichhthe Deed defendants should be required to pay treble damages

1  according to the Fair Real Estate Practices Act of California.

XX.

2

VIOLATIONS OF THE FAIR DEBT COLLECTION
3  PRACTICES ACT BY OPTION ONE

4  274.  Plaintiff encorporates by reference, the allegations of his

5  8th, 14th, 15th, 16th, 18th and 19 causes of action that are material

6  as the the defendant Option One as though fully set forth herein.

7  275.  Option One, imudding the act complained of herein, and acting

8  as a lender under the contract and contract documents, pertaining to

9  the deed of trust on plaintff's home, violated the Fair Credit

10  Practices Act of California.

11  276.  Defendant, Option One should be required to pay treble damages

12  to plaintiff for violations of the Fair Debt Collections Practices

13  Act,  Civil Code §1788, et. Seq..

XI.

14  VIOLATION OF FEDERAL FAIR DEBT COLLECTION PRAC. ACT BY DEED DEF.

15

16  277.  Plaintiff realleges and incorporate by reference, each of the

17  allegations contained in the 20th cause of action as though fully

18  set forth herein.

19  279.  The actions of Option One, as set forty herein are in violation

20  of the Federal Fair Debt Collection Practices Act (15 U.S.C. §1692

21  et. seq.)

22  280.  Defendant, Option One should be required to pay treble damages

23  to plaintiff for violatins of 15 U.S.C.  §1692 et. seq..

24  XII.

BREACH OF FIDUCIARY DUTY BY OPTION
25  ONE.

26  281.  Option one settled an fire damage claim on plaintiff's home

27  with Safeco, on plaintiff'S behalf.

28  282.  Option one acted without consulting plaintiff or advising plaintiff

of the negotionation leading u p to the settlement.

283.   Option One made decision about the amount the claim should settle

for and made the decision to settle independant of any imput from

plaintiff.

284.   In so doing, Option One created and fostered a fiduciary relation-

ship between itself and plaintiff, which required the highest of

trust and responsibility in Option One's relationship wiht

Plaintiff, by acting as plaintiff's "attorney in fact" in settleing
s
and negotiating the claim on the Safeco policy, under which plaintiff

was an insured, under the policy.

285.   Option intentionally anmd recklessly breached the fiduciary

relationship, in conscious disregard and deliberate indifference

to the rights of plaintiff and did so with an intent to vex, annoy

and injure plaintiff, by:

A.   Negotiating the insurance settlement without even asking

plaintiff how much had been spent in repairs of the fire damage.

B.   Settleing the fire claim and negotiating the claim secretly

with Safeco.

C.   Accepting the full amount of the payment under the policy

claim, and signing documents in that regard with Safeco.

D./ Secretly spending the proceeds as Option One saw fit, in

utter disregard of the fiduciary relationship they created by

acting as plaintff attorney in settleing the funds and dispursing

them.

E.   Usning the funds for Option One's purposes and benifit, only,

with utter disregard of its duties to plaintiff.

286.   In doing the acts complained of herein, defendangt caused

plaintiff to suffer loss of his home, homelessness, severe emotional

d

distress and loss of earnings and earning capacity, as well as injury
to his mind and body.

287.   The acts of the defendants herein was intentional and reckless
and inconscious disregard of the rights of plaintiff and they
were done by defendnats withnan intent to vex, annoy or injure.

WHEREFOR, plaintiff prays judgement as follows;

1.   On all Causes of Action, for general and special damages
in an amount en excess of the jurisdictional minimums of this
Court, according to proof.

2.   On all causes of action, as to those defendants who are not
Public Entities, for punitive damages in an amount sufficiet to
punish each of them and to prevent a repitition of the same
or similar conduct, and in an amount sufficient to detur others
from engaging in such conduct/

3.   On the third cause of action, for the relief specified in
that cause of action.

4.   On the seventh cause of action, for a declaration that the
policies and proceedures and customs, on their face and as
applied of defendants is Unconstitutional and in violation of
Federal Law, and for a temporary injuction agianst the defendants;
to prevent them from engaging in the unconstitutional conduct
and for an Order Mandating that the defendants promulgate rules
and regulations that are reasonably designed to bringnthehe
conduct of the defendants into complyance with the United States
Constitution and other Federal Laws.

5.   For the 12th Cause of action, for treble damages for violation
of the Fair Claims Practices Act of California.

6.   On the sixteenth cause of action, for treble damages for
violations of the right to privacy guaranteed by the Constitution
of the State of California.

7.   On the eighteeth cause of action, for return of the proceeds of
the settlement with Safeco, and for interest thereon in the
amount provided by law.

8.   ON the twentieth cause of action, for treble damages for
violatins of the Fair Real Estate Practices Act of California.

9.   On the twenty first cause of action, for treble damages
for violations of the Fair Debt Collections Practices Act of
California.

10. On the twenty second cause of action, for treble damages
for violations of Federal Fair Debt Collection Practices Act.

11.  On all causes of action, for attorney's fees, costs and
such other and furthur relief as the court may deem just and
proper.

04/30/07

GREGORY MORRIS, pro. per.