UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY MORRIS,

    Plaintiff,

    v.

STATE BAR OF CALIFORNIA AT SAN FRANCISCO; SAFECO INSURANCE COMPANY, et al.,

    Defendants.

No. C 07-2890 PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the court is defendants' motion to dismiss plaintiff's complaint. Having carefully read the parties' papers and considered the relevant legal authority, the court hereby GRANTS defendants' motion to dismiss, for the reasons summarized as follows.

## BACKGROUND

This is an action by pro se plaintiff Gregory Morris ("plaintiff") against multiple persons and entities, generally alleging numerous violations of plaintiff's civil rights and other rights protected by federal disability laws. Among the alleged defendants are: the State Bar of California; Mr. Robert Driscal;[1] the Board of Governors of the State Bar; members of the Board of Governors (with the exception of Mr. Anthony Capozzi); the State Bar's Lawyers Assistance Program; and Doe defendants 16-20 and 26-60 (collectively the "Bar defendants"). See Complaint for Damages; Request for Injunctive Relief; Request for Declaratory Relief ("Complaint"), ¶¶ 13, 32, 34.

---

[1] It is not clear to the court whether Mr. Driscal is associated with the State Bar of California. While plaintiff has alleged Mr. Driscal's status as defendant in connection with the State Bar entities, plaintiff never specifies Mr. Driscal's relationship to the latter, and Mr. Driscal does not appear to be specifically represented by the moving defendants' counsel and in connection with the moving defendants' counsel.

A.      Background Allegations

Plaintiff was once an attorney admitted to the practice of law in the State of California. See Complaint, ¶ 53. In 2002, plaintiff also owned a home located in Fresno, California. See id. at ¶¶ 19, 90. Plaintiff's home was insured for fire damage and limited property damage/loss. Id. at ¶ 216.

On August 15, 2002, there was a fire at plaintiff's home. The fire was investigated by plaintiff's insurer and the Fresno Fire Department, among other persons and entities. See id. at ¶¶ 14, 20, 22. Subsequent to the investigations, on August 25, 2002, plaintiff was arrested and charged with arson and insurance fraud. Id. at ¶¶ 91, 96. Ultimately, after spending nearly two and one half years defending himself against these charges, the charges were dismissed in December 2004. Id. at ¶ 99. Plaintiff alleges, however, that exculpatory evidence was actually discovered during the investigations into the fire at plaintiff's home, but that the various investigating persons and agencies intentionally or recklessly ignored and disregarded this evidence, with the aim of prosecuting plaintiff for insurance fraud and arson. Complaint, ¶ 91.

Subsequent to the above events, from October 2003 through August 2006, plaintiff sought treatment from the California State Bar's Lawyers Assistance Program ("LAP") for psychological illnesses that resulted from the events following the fire at his home. See Complaint, ¶ 33. It appears that the Bar defendants provided some treatment, but then at some point, abruptly withdrew assistance, despite the fact that plaintiff was entitled to treatment services by virtue of his membership in the State Bar. See id. at ¶ 34. Plaintiff further alleges that this withdrawal of services occurred without first providing plaintiff the opportunity to be heard regarding the withdrawal of services. According to plaintiff, he consequently suffered a delay in diagnosis and treatment of a serious mental illness, which "set in motion" a series of proximately caused events, including homelessness, the loss of plaintiff's business and profession, and plaintiff's severe emotional distress. See id. at ¶ 35.

Meanwhile, on May 8, 2004, the State Bar had initiated disciplinary proceedings against plaintiff as a result of plaintiff's alleged misuse of client trust accounts, and on February 17, 2006, the State Bar Court recommended that plaintiff be disbarred. See In the Matter of Gregory A. Morris, Decision and Order of Involuntary Inactive Enrollment at 2, 46 (Feb. 17 2006). Plaintiff alleges that thereafter, on June 30, 2006, he was improperly disbarred by the State Bar.

According to plaintiff's allegations, the State Bar's disbarment proceedings took place while plaintiff was mentally disabled due to brain injury and Post Traumatic Stress Syndrome "superimposed on pre-existing Attention Deficit Disorder" – disabilities of which the State Bar was aware. See Complaint, ¶53. Nonetheless, alleges plaintiff, and despite having knowledge that plaintiff's disabilities prevented him from participating in his own defense, the State Bar failed to inform plaintiff of any right to counsel, or provide plaintiff with notice or reasonable opportunity to be heard. See id. at ¶¶ 58-59, 64.

As a result of the foregoing allegations, plaintiff filed the instant complaint on June 4, 2007, alleging twenty-two different causes of action against more than eighteen defendants, including Doe defendants. In addition to the Bar defendants, the defendants also include various individuals and entities associated with the City of Fresno's fire investigation personnel; two insurance companies; the Fresno County District Attorney's Office, and certain associated individuals; and two financial entities associated with plaintiff's mortgage and his deed. See generally Complaint.

Plaintiff's claims against the Bar defendants include:[2] (1) a claim for violation of due process and equal protection under 42 U.S.C. § 1983 by virtue of the Bar defendants' withdrawal of assistance from the LAP (First Claim for Relief); (2) a claim for violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act by virtue of the Bar

---

[2] Plaintiff's complaint, which is drafted in a rambling, and at times incoherent fashion, is less than clear in setting forth with clarity the precise nature of the claims alleged against all defendants. The court has done its best to parse out the defined causes of action that plaintiff is most likely alleging with respect to each relevant claim for relief.

3

defendants' withdrawal of assistance from the Lawyers Assistance Program (Second Claim for Relief); (3) a claim for violation of the ADA, Rehabilitation Act, and 42 U.S.C. § 1983 for failure to accommodate attorneys with mental disabilities in connection with disbarment proceedings, and for violation of due process and equal protection in connection with the disbarment of attorneys with mental disabilities (Third Claim for Relief); (4) a claim for violation of right to privacy under the California Constitution (Ninth Claim for Relief);[3] and (5) a claim for obstruction of justice (Thirteenth Claim for Relief).

The Bar defendants now move to dismiss all of these claims against them.

## DISCUSSION

A.   Legal Standard

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level." See Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007). While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. Twombly, 127 S. Ct. at 1974.

---

[3]   Plaintiff's invasion of privacy claim is confusing. Plaintiff alleges, for example, that the Bar defendants wrongfully invaded plaintiff's privacy by disclosing confidential information without a warrant or a subpoena. See Complaint, ¶ 140(D). However, the claim also alleges that all defendants violated plaintiff's privacy "by doing the acts of Eighth cause of action." Id. at ¶ 137. This eighth cause of action is alleged as to private entities only, though, and expressly excludes the Bar defendants, as they are public entities. Accordingly, it is unclear to the court whether plaintiff in fact intends to state his privacy cause of action against the Bar defendants. For purposes of the instant motion, however, and construing plaintiff's allegations liberally, the court will treat plaintiff's privacy claim as having been properly alleged against the Bar defendants.

B.      Analysis

The Bar defendants move to dismiss plaintiff's claims against them on grounds that (1) Eleventh Amendment immunity applies to all claims asserted against them, since each Bar defendant agency is an arm of the state, and since no Bar defendant individuals have otherwise been properly named in the complaint; (2) plaintiff's claims are jurisdictionally barred pursuant to the Rooker-Feldman doctrine; and (3) plaintiff's claims fail to state valid claims for relief at any rate.  The court need not reach all of these grounds to conclude that plaintiff's claims against the Bar defendants are properly dismissed for the multiple reasons set forth below.

Preliminarily, however, several claims may be summarily dismissed before even getting to the merits of the above arguments, as plaintiff has conceded their invalidity. First, for example, the court hereby DISMISSES plaintiff's second and third claims for relief, to the extent they allege claims pursuant to the Rehabilitation Act.  See Complaint, ¶¶ 37-88.  The Rehabilitation Act only applies to "program[s] or activit[ies] receiving Federal financial assistance . . .".  See 29 U.S.C. §§ 794, 794a.  Plaintiff, however, has failed to allege that any of the Bar Defendants receives federal financial assistance, and has failed to oppose defendants' motion on this ground.

Second, the court also DISMISSES plaintiff's class action claims, as alleged in his third claim for relief.  See, e.g., Complaint, ¶¶ 41, 54, 65.  Pro se plaintiffs are not permitted to bring class actions, a fact that plaintiff recognizes in his opposition brief.  See Fed. R. Civ. P. 23(a); see also C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir.1987) (holding that a pro se litigant may not appear as an attorney for others); Russell v. U. S., 308 F.2d 78, 79 (9th Cir. 1962)("A litigant appearing in propria persona has no authority to represent anyone other than himself").

Third, the court also DISMISSES with prejudice plaintiff's ninth and thirteenth claims for relief, which allege (a) a claim pursuant to the California Constitution's right to privacy, and (b) a claim for obstruction of justice.  See Complaint, ¶ ¶ 134-40, 204-07.  Plaintiff

concedes in his opposition that he does not allege any "pendant state claims," which would include the ninth claim pursuant to the California Constitution, and obstruction of justice is a criminal charge that does not provide a private cause of action. See Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir.1997).

Finally, the court also notes that, to the extent plaintiff has alleged his claims against *individual* Bar defendant Bob Driscal, such claims against Mr. Driscal must be DISMISSED, for as the Bar defendants point out and plaintiff does not dispute, there is no State Bar employee named Bob Driscal.[4]

Taking these initial rulings into account, the court now turns to the relevant issues before it.

1.  Eleventh Amendment Immunity

As noted above, plaintiff has alleged claims against: the State Bar of California, the Board of Governors of the State Bar of California, the State Bar's Lawyer Assistance Program, and numerous unidentified Does. The majority of these defendants, however, are entitled to Eleventh Amendment immunity.

The Eleventh Amendment protects states and their entities and agencies against suits brought by citizens in federal court. See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); Montana v. Goldin, 394 F.3d 1189, 1195 (9th Cir.2005)(state agencies are protected by Eleventh Amendment immunity); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994)("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"); Gilbert v. DaGrossa, 756 F.2d 1455, 1458-59 (9th Cir.1985)(bar of sovereign immunity applies in suit against officers and employees of the United States in their official capacities). It is well established that the State Bar, the State Bar's Board of Governors and, by extension, the State Bar's Lawyers Assistance Program,

---

[4] The Bar defendants also note that, to the extent plaintiff meant to allege claims against a Mr. James Driscoll, this Mr. Driscoll was an independent contractor for the LAP, is un-associated with the State Bar, and is not represented by counsel for Bar defendants at any rate.

6

are arms of the State for Eleventh Amendment purposes. See, e.g., Lupert v. California State Bar, 761 F.2d 1325, 1327 (9th Cir.1985)(the Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies "such as California's Bar Association and Bar Court"); Hirsh v. Justices of the Sup. Ct., et al., 67 F.3d 708, 715 (9th Cir. 1995). Indeed, plaintiff concedes as much with respect to the State Bar and the State Bar's Board of Governors. And while plaintiff attempts to argue that the LAP is not an arm of the State for purposes of the Eleventh Amendment, he cites no satisfactory evidence or case law in support of this point, and the authorities reviewed by the court suggest the opposite. See, e.g., Cal. Bus. & Prof. Code § 6231 (establishing State Bar Board of Governors' authority to establish an Attorney Diversion and Assistance Program); Cal. Bus. & Prof. Code § 6238 (requiring LAP Oversight Committee makes annual reports to both the Board of Governors and to the California State Legislature). Accordingly, the court concludes that Eleventh Amendment immunity is applicable to the Bar defendant entities.

     Plaintiff may avoid this immunity doctrine, however, if he can establish that a recognized exception to the doctrine applies. Eleventh Amendment immunity will not apply, for example, if plaintiff can demonstrate (1) that the defendant has waived its Eleventh Amendment immunity; (2) that Congress has overridden it; or (3) that the suit is being brought for injunctive relief against a state official. See Douglas v. Cal. Dept. of Youth Authority, 271 F.3d 812, 817-18 (9th Cir. 2001).

     Here, neither party disputes that the Bar defendants have not waived Eleventh Amendment immunity. Nor has plaintiff alleged a valid claim for injunctive relief against any valid individual state officials for, as mentioned previously, Bob Driscol is a non-existent State employee and has been dismissed. And while plaintiff has alleged claims against Does 16-20 and 26-60, see Complaint, ¶ 13, there are no claims for injunctive relief alleged as to these Doe defendants. Indeed, to the extent plaintiff has alleged any request for injunctive relief at all, these allegations appear to relate to plaintiff's class action status – which the court has already held is improper.

This leaves only the question of Congressional abrogation of immunity. It has been recognized that, in certain cases, Congress may abrogate Eleventh Amendment immunity if necessary to enforce the due process and equal protection rights guaranteed by section five of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). It is undisputed, however, that Congress has *not* done so with respect to claims brought pursuant to 42 U.S.C. § 1983, or for that matter, to claims brought pursuant to §§ 1985 and 1986. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 67 (1989)("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 975 (9th Cir. 1994)(applying Eleventh Amendment immunity to claims under sections 1985 and 1986). Thus, plaintiff's first claim for relief alleging a violation of section 1983, and plaintiff's third claim for relief to the extent it includes a claim pursuant to section 1983 and makes passing reference to section 1985, cannot be alleged against the Bar defendants, since no abrogation exception to Eleventh Amendment immunity applies.

Plaintiff contends, however, that Congress has abrogated Eleventh Amendment immunity with respect to his claims under Title II of the ADA, as stated in his second and third claims for relief. As a general matter, plaintiff has correctly recited the law. In United States v. Georgia, the Supreme Court observed that Congress has "unequivocal[ly] express[ed] [its] intent to abrogate state sovereign immunity." See 546 U.S. 151, 154 (2006). The court noted, however, that "insofar as [ADA] Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. at 159. Thus, applying this rule here, plaintiff must, at a minimum, allege conduct that violates the Fourteenth Amendment, if his ADA claims against the Bar defendants are to fall outside the boundaries of Eleventh Amendment immunity.

Plaintiff, however, does not do so. Reading plaintiff's complaint liberally, plaintiff has alleged that the Bar defendants' withdrawal of assistance via the LAP program, and the

8

underlying Bar proceedings that resulted in plaintiff's disbarment (1) discriminated against him on the basis of his mental disability and failed to accommodate his disability, in violation of the Fourteenth Amendment's equal protection guarantee; and (2) failed to comport with constitutional due process requirements. See Complaint, ¶¶ 34-35, 38, 40, 41-42, 49, 67; see also Pl. Opp. at 25, 44, 46.  However, as the Bar defendants point out, the Supreme Court has held that mental disability does not qualify as a suspect class warranting heightened treatment under the Equal Protection Clause. See Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 366-67 (2001).  Furthermore, although plaintiff alleges that the Bar defendants' actions constituted an improper "taking" in violation of constitutional due process, plaintiff has not offered any authority for the proposition that plaintiff's participation in the LAP program is constitutionally protected such that a due process claim may be premised upon withdrawal of such, or any authority which supports the conclusion that the State Bar's disciplinary and disbarment procedures, standing alone, violate any recognized due process right.  Indeed, plaintiff could not suggest as much, since the relevant case law relied upon by the Bar defendants suggests the opposite. See Giannini v. Real, 911 F.2d 354, 358 (9th Cir. 1990)(right to practice law itself is not a fundamental right pursuant to the Fourteenth Amendment); id. at 358 (noting that "review of state procedures for bar admissions" is guided by rational basis standard and triggers no heightened scrutiny).  Finally, although plaintiff has included numerous conclusory allegations that the Bar defendants' disciplinary proceedings violated plaintiff's procedural due process rights, plaintiff has failed to allege any particularized procedural process violations that would satisfactorily allege such a claim with the requisite particularity.

      Thus, plaintiff has alleged neither the deprivation of a constitutionally protected property interest, nor that he is a member of a suspect class, nor an actionable violation of procedural due process. See, e.g., Carey v. Piphus, 435 U.S. 247, 259 (1978)(The Fourteenth Amendment protects individuals against the deprivation of their property or

liberty by state actors without procedural due process).  In sum, therefore, plaintiff has not sufficiently alleged conduct that actually violates the Fourteenth Amendment, such that the court can satisfactorily conclude that Eleventh Amendment immunity has been abrogated with respect to plaintiff's ADA, Title II claims against the Bar defendant agencies.

It should be noted, that with respect to the Doe defendants who plaintiff has named in conjunction with the existing Bar defendant agencies, the same Eleventh Amendment immunity extends to them, to the extent plaintiff has sued them in their official capacities for money damages.  See Complaint, ¶ 29; Pena v. Gardner, 976 F.2d 469, 472 (9th Cir.1992); see also Hafer v. Melo, 502 U.S. 21, 24-25 (1991)(holding that a defendant official acting in his official capacity receives the same immunity as the government agency to which he belongs).  Accordingly, any such claims are also DISMISSED.[5]

To the extent that plaintiff alleges that these unidentified Doe defendants are being sued in their "personal" or "individual" capacities, however, Eleventh Amendment immunity does not apply, regardless whether plaintiff seeks monetary *or* injunctive relief.  See Cerrato, 26 F.3d at 973 (Court had jurisdiction to hear section 1983 claims over government defendants in their individual capacities for money damages, since a victory in such a suit is a "victory against the individual defendant, rather than against the entity that employs him.").  Thus, plaintiff's claims against Does 16-10 and 26-60, to the extent that they are alleged in an individual capacity, would normally be allowed to go forward, at least until plaintiff is able to determine the Does' identifies through discovery and properly amend his complaint to substitute identified parties for the Doe defendants.  See Complaint, ¶¶ 13, 18; see, e.g., Gillespie v. Civiletti, 629 F.2d 637, 643 (9th Cir.1980)(vacating district court's

---

[5] It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority.  See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 (9th Cir. 1994).  Thus, to the extent that plaintiff is able to allege valid claims for prospective injunctive relief against state officers, such claims would normally be permitted to go forward.  As noted above, however, plaintiff has not alleged any valid claims for prospective injunctive relief against the Doe defendants here (even assuming they could later be identified as state officers).

order dismissing Doe defendants prior to discovery). Ultimately, however, for separate reasons discussed below in connection with the Rooker-Feldman doctrine, these claims, too, must be dismissed.

In sum, plaintiff's claims against the Bar defendant agencies, as alleged in plaintiff's first, second, and third claims for relief, are DISMISSED on grounds that Eleventh Amendment immunity bars the claims. Plaintiff's claims against the individual Bar defendant Does, to the extent they are alleged in the Doe defendants' official capacities, are also DISMISSED. Plaintiff's remaining claims against the individual Bar defendant Does, to the extent they are alleged in the Doe defendants' personal capacities, while normally permissible, will nonetheless be DISMISSED for the reasons that follow.

2.      Rooker-Feldman Doctrine

Even if plaintiff's claims against the Bar defendants were not barred on Eleventh Amendment immunity grounds, the court would nonetheless lack subject matter jurisdiction over the claims based on the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars federal district courts from "exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). A federal action constitutes such a de facto appeal where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003). In such circumstances, "the district court is in essence being called upon to review the state court decision." Feldman, 460 U.S. at 483 n.16; see also Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859-60 (9th Cir. 2008).

Here, plaintiff's complaint purports to assert several federal claims against the Bar defendants based on the defendants' alleged withdrawal of LAP assistance, and based on

11

the defendants' alleged discrimination against plaintiff and other persons with "mental disabilities" arising from the defendants' prosecution and disbarment of plaintiff, and the rules and procedures governing same. See, e.g., Complaint, ¶¶ 34, 41, 45, 46. However, plaintiff's real challenge is to the state court decision ordering plaintiff disbarred due to disciplinary issues. Plaintiff, for example, alleges that the Bar defendants' withdrawal of LAP assistance resulted in a series "of proximately caused events, including homelessness, loss of plaintiff's profession and business, loss of earnings and earning capacity and severe emotional distress." See Complaint, ¶ 35. Plaintiff also alleges that the gravamen of his ADA claim against defendants is that "instead of providing [class members] with due process of law, the Bar proceeds to disbar and otherwise discipline members who are even less accommodated than persons with physical disabilities...". See id. at ¶ 41. To that end, plaintiff alleges that defendants were aware of plaintiff' mental disabilities, yet "proceeded to disbar him by default and allow the disbarment to become final in the face of such knowledge." Id. at ¶ 53. Plaintiff complains of the "sweeping and inflammatory allegations of the complaints of clients, and the allegations of the complaint of the Bar," and furthermore complains that the Bar defendants "completely ignore[d] and disregard[ed] clear evidence." Id. at ¶ 61.

Plaintiff's opposition brief also makes patently clear that plaintiff's primary grounds for his claims against the Bar defendants are rooted in the State Bar's disbarment proceedings and the State Supreme Court's final order disbarring plaintiff. See generally Pl. Opp. Br. Thus, plaintiff is not pursuing a general challenge to the State Bar's policies, but is really seeking review of his individual claim. To the extent that plaintiff does have allegations in his complaint that appear to pursue a general challenge to the Bar's policies, see, e.g., Complaint, ¶¶ 31-88, the court concludes that these allegations are inextricably intertwined with the request for review of the State Bar's decision. Moreover, the vast majority constitute class allegations which, as explained earlier, are dismissed due to plaintiff's pro se status.

In sum, the relief plaintiff seeks is "inextricably intertwined" with the State Supreme Court's final decision following the State Bar disbarment proceedings. Plaintiff's claims against the Bar defendants are therefore DISMISSED on Rooker-Feldman grounds.

C.   Conclusion

For the foregoing reasons, it is unnecessary for the court to reach the remainder of the Bar defendants' arguments. The Bar defendants' motion to dismiss plaintiff's complaint against them is GRANTED, and plaintiff's claims as to these defendants are hereby DISMISSED. The dismissal is with prejudice, as the dismissal is grounded in the court's lack of subject matter jurisdiction, and any amendment would be futile.

**IT IS SO ORDERED**.

Dated: August 22, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge