# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY MORRIS, | CASE NO. CV F 09-0026 LJO GSA |
| Plaintiffs, | **ORDER ON DEFENDANT CITY OF FRESNO AND MACALPINE'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| STATE BAR OF CALIFORNIA, et al., | |
| Defendants. | |

By notice filed on May 7, 2010, Defendants the City of Fresno and Donald MacAlpine (collectively referred to as "defendants") move for summary judgment, or in the alternative, summary adjudication on Plaintiffs' Fourth, Fifth, Sixth and Ninth Causes of Action in the Complaint. Plaintiff Gregory Morris did not file an opposition. Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument. Having considered the moving papers, as well as the Court's file, the Court issues the following order.

## **FACTUAL BACKGROUND**

This is an action by plaintiff Gregory Morris ("plaintiff") against multiple persons and entities, generally alleging numerous violations of plaintiff's civil rights and other rights protected by federal disability laws.

Plaintiff was an attorney admitted to the practice of law in the State of California. (Doc. 1, Complaint ¶ 53.) In 2002, plaintiff also owned a home located in Fresno, California. (Doc. 1, Complaint ¶¶ 19, 90.) Plaintiff's home was insured for fire damage and limited property

damage/loss. (Doc. 1, Complaint ¶ 216.) On August 15, 2002, plaintiff alleges an accidental fire occurred at plaintiff's home. The fire was investigated by the insurer and the Fresno Fire Department, among other persons and entities. (Doc. 1, Complaint ¶¶ 14, 20, 22.) After the investigations, on August 25, 2002, plaintiff was arrested and charged with arson and insurance fraud. (Doc. 1, Complaint ¶¶ 91, 96.) After spending nearly two and one half years defending himself against the charges, the charges ultimately were dismissed in December 2004. (Doc. 1, Complaint ¶ 99.) Plaintiff alleges, however, that exculpatory evidence was actually discovered during the investigations into the fire at plaintiff's home, but that the various investigating persons and agencies intentionally or recklessly ignored and disregarded this evidence, with the aim of prosecuting plaintiff for insurance fraud and arson. (Doc. 1, Complaint ¶ 91.)

Plaintiff alleges that following causes of action against the City of Fresno and MacAlpine.

1. Fourth Cause of action - for conspiracy to violate plaintiff's civil rights. (Doc. 1, Complaint p. 36).

2. Fifth Cause of action - for violation of Due Process and Equal Protection, "unlawful warrantless arrest and prosecution without probable cause." (Doc. 1, Complaint p. 32)

3. Sixth Cause of action - for supervisory liability for constitutional violations against fire defendants. (Doc. 1, Complaint p. 30).

4. Ninth Cause of action - for violation of the California Constitution. (Doc. 1, Complaint p.48)

**ANALYSIS AND DISCUSSION**

**A.   Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and

assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

The court cannot grant the motion merely because plaintiff has failed to oppose the motion or failed to submit a statement of disputed facts. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  Rule 56(e) requires the party against whom the motion is made to "set for specific facts showing that there is a genuine issue for trial." Absent such a showing, <u>a properly supported</u> motion for summary judgment may be granted if the court finds it appropriate. *Nelson, Robbins, et al v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) (emphasis added).  The moving party still has to meet its burden of proof. *In re Rogstad*, 126 F.3d 1224, 1227 (1997) (summary judgment is not an acceptable sanction for violation of a local rule.)

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.  "If, however, a moving party carries its burden of production, the nonmoving party must

produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

**B.    42 U.S.C. §1983**

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.

**C.    Fourth Amendment Claims for False Arrest**

Defendants argue that plaintiff claims that he was falsely arrested is barred by collateral estoppel or issue preclusion. Defendant argues that the Fresno County Superior Court found probable cause, at a contested preliminary hearing, for the crime of arson against plaintiff. (Doc. 106, Defendant P&A p.7.) Defendants argue plaintiff is barred by the prior judicial determination that probable cause existed for his arrest on the charge of arson.

A determination of probable cause at a preliminary hearing may preclude constitutional violations for false arrest or for malicious prosecution. *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994). A probable cause determination at a preliminary hearing is considered a final judgment on the merits because the defendant can immediately appeal the determination. *Haupt v. Dillard*, 17 F.3d at 288-89; *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 1145-46, 87 Cal.Rptr.2d 95 (1999). In California, an accused can immediately appeal the determination by filing a motion to set aside the preliminary hearing under California Penal Code § 995 and then obtain review of the decision on this motion by filing a writ of prohibition under California Penal Code § 999a. *See McCutchen*, 73 Cal.App.4th at 1146. Consequently, a preliminary hearing that determines probable cause to arrest may bar subsequent claims under § 1983 based on this issue, but not in all circumstances. *See, e.g.*, *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir.2004). In California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie-but not conclusive-evidence of probable cause. *Awabdy v. City of Adelanto*, 368 F.3d at 1067. A civil plaintiff in a § 1983 action may rebut a prima facie finding of probable cause "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* At 1067.

Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. *Diruzza v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir.2003). Under California law, collateral estoppel (or issue preclusion) is applied if (1) the issue sought to be precluded is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party to be estopped was a party to the former proceeding or in privity with a party to the former proceeding. *Id.* In *Haupt*, the court applied Nevada law of collateral estoppel. 17 F.3d at 288. Nevada's collateral estoppel law is identical to California's collateral estoppel law. *See McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 1145, 87 Cal.Rptr.2d 95 (1999).

Here, it is undisputed that plaintiff was arrested on suspicion of arson. It is also undisputed

that the Fresno County District Attorneys' office reviewed the fire department's investigation of the fire and filed a felony complaint for arson on August 31, 2001. (Doc. 106, Undisputed Fact, fact 17.) It is equally undisputed that after a preliminary hearing before a Superior Court Judge, the Court ordered plaintiff to be held to answer for the crime. (Doc. 106, Undisputed Fact, fact 18.) Thus, the issue of whether probable cause existed for the arrest was previously adjudicated. No evidence of "fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith" has been submitted by plaintiff to rebut the *prima facie* finding of probable cause. *Awabdy*, 368 F. 3d at 1067. Accordingly, the relitigation of the probable cause for arrest is precluded by collateral estoppel.

**D.     Fourth Amendment Claim for Malicious Prosecution**

Defendant argues plaintiff also claims malicious prosecution. The false arrest claim covers the time up to the arraignment; but the malicious prosecution claim covers subsequent events. Defendant argues that plaintiff cannot show the City or MacAlpine was involved in the prosecution because the County District Attorney made the decision to prosecute. (Doc. 106, Defendants P&A p.9.) Further, plaintiff cannot show "malice" as part of the City or MacAlpine because the prosecution was based upon the District Attorney's independent judgment.[1]

**1.     Civil Rights Malicious Prosecution**

In the Ninth Circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. *Usher v. City of Los Angeles*, 828 F.2d 556, 561-562 (9th Cir. 1987). However, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Usher,* 828 F.2d at 562. In California, the elements of malicious prosecution are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause. *Usher*, 828 F.2d at 562, citing *Singleton v. Perry*, 45 Cal.2d 489, 494 (1955). If a

---

[1] On a procedural issue, defendants argue that the caption of the fifth cause of action states "prosecution without probable cause," plaintiff's allegations do not allege anything other than "arrest." (Doc. 106, P&A p.9.) Nonetheless, the Court will address the merits of the §1983 claims for malicious prosecution.

6

1  plaintiff cannot establish any one of these three elements, his malicious prosecution action will fail.
2  *StaffPro, Inc. v. Elite Show Services, Inc.*, 136 Cal.App.4th 1392, 1398, 39 Cal.Rptr.3d 682 (2006).
3        Plaintiff must come forward with evidence that the prosecution was conducted to deny
4  plaintiff of equal protection. In *Usher*, the Ninth Circuit found, at the pleading stage, allegations
5  were sufficient for malicious prosecution in violation of 42 U.S. C. §1983. Plaintiff there alleged
6  defendants illegally arrested him, contrived charges to justify the arrest, submitted false police
7  reports, called him racially derogatory names and the criminal proceeding terminated in his favor.
8  The Court stated that these allegations were sufficient to bring the claim within the exception for
9  malicious prosecution in violation of §1983.
10       Here, plaintiff has not raised an issue of fact as to a "retaliatory motive" by defendant
11 MacAlpine or an issue of fact as to the absence of probable cause. The question of probable cause
12 was determined by the Fresno County Superior Court at the preliminary hearing in which the Court
13 ruled probable cause existed to hold plaintiff for the crimes alleged.
14       **2.     Presumption of prosecutorial independence**
15       A prosecutor's independent judgment may break the chain of causation between the
16 unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff.
17 *Beck v. City of Upland,* 527 F.3d 853, 862 (9th Cir. 2008). "Put in traditional tort terms, the
18 prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort
19 plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution."
20 *Id.* This presumption can be rebutted by plaintiff showing "a retaliatory motive on the part of an
21 official urging prosecution combined with an absence of probable cause supporting the prosecutor's
22 decision." *Id.* at 865. A prosecutor's independent judgment may break the chain of causation
23 between the unconstitutional actions of other officials and the harm suffered by a constitutional tort
24 plaintiff. *Beck*, 527 F.3d at 862; accord *McSherry v. city of Long Beach*, 584 F.3d 1129, 1136 (9th
25 Cir. 2009).
26       Defendants have come forward with evidence that the "prosecutors charging decisions" acted
27 as an "intervening cause." They come forward with evidence of the independence of prosecutors
28 determination to file the criminal information. (Doc. 109, Jenkins Decl. ¶¶2, 4, 6; Request for

7

Admissions #19, 22 ("Admit the City of Fresno did not make the determination to file a criminal information against you;" "Admit that the District Attorney's office had the sole discretion to prosecute the criminal action after August 31, 2001.")) A Deputy District Attorney Jenkins provides testimony that it is the District Attorney's office standard practice and procedure to review police reports prior to filing complaint. (Doc. 109, Jenkins Decl. ¶2.) The decision to prosecute plaintiff rested with the District Attorney's office, and no one told the District Attorney to handle plaintiff's prosecution differently because plaintiff was involved. (Doc. 109, Jenkins Decl. ¶¶2, 6.)

Plaintiff has not come forward with any evidence that the decision to prosecute plaintiff was influenced improperly by defendant MacAlpine or the City. The undisputed evidence establishes that plaintiff was investigated upon the suspicion of arson and there was probable cause to support plaintiff's arrest. The evidence is undisputed that the prosecutor made an independent decision to file an information against plaintiff. The evidence is undisputed that the Fresno Superior Court found probable cause to hold plaintiff for the crime. Accordingly, summary judgment will be granted on the claim for malicious prosecution.

**E.    Due Process**

Defendants note that plaintiff alleges a due process violation under the Fifth and Fourteenth Amendment. (Doc.1 Complaint¶111.) The complaint states:

> "As a result of their unlawful action, defendants deprived plaintiff of his liberty without due process of law and deprived him of equal protection of the laws in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.) (Doc. 1, Complaint ¶111.)

When a governmental conduct is governed by a specific Constitutional amendment, the conduct is not analyzed under due process. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-1871, 104 L.Ed.2d 443 (1989) requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. The Fourth Amendment provides an explicit textual source of constitution protection against unlawful seizures. *Graham*, 490 U.S. at 394-95 (that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims).

As plaintiff alleges constitutional violations arising from his arrest, this claim is pursuant to the Fourth Amendment and not Due Process. Accordingly, plaintiff cannot establish a Due Process violation.

**F.     Equal Protection**

Defendant argues that plaintiff alleges an equal protection claim under the Fourteenth Amendment, but the allegations are identical to those under the Fourth Amendment. (Doc.106, P&A p.11; Doc. 1, Complaint ¶111.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190 (1923).

A section 1983 plaintiff alleging an equal protection violation must prove that: (1) the defendants treated plaintiff differently from others similarly situated; (2) the unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (a section 1983 plaintiff alleging denial of equal protection "must show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class."), *cert. denied*, 525 U.S. 1154 (1999); *Van Pool v. City and County of San Francisco*, 752 F.Supp. 915, 927 (N.D.Cal.1990) (section 1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by others similarly situated," and that the treatment complained of was under color of state law).

### *Class Of One*

Equal protection claims may be brought by a "'class of one,' where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000) ("*Olech*"). Defendants attribute to the Ninth Circuit Court of Appeals to "circumscribe" *Olech*'s class of one equal protection due to potential to require federal court review of "almost every executive and administrative decision made by state or local actors." In *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 995-996 (9th Cir. 2007), *cert. denied,* 128 S.Ct. 977, 169 L.Ed.2d 800 (2008), the Ninth Circuit explained:

> In addition to significantly altering traditional personnel practices, applying the class-of-one theory to public employment would also generate a flood of new cases, requiring the federal courts to decide whether any public employee was fired for an arbitrary reason or a rational one. *See Jennings*, 383 F.3d at 1211. The theory would apply not only to discharges, but also to other employment actions, such as promotions, disciplinary actions, and decisions about pay, benefits and transfers. Contrary to the Supreme Court's admonition, federal courts would be required to "review the multitude of personnel decisions that are made daily by public agencies." *Bishop*, 426 U.S. at 349, 96 S.Ct. 2074.
>
> Finally, we believe that *Olech* is too slender a reed on which to base such a transformation of public employment law. "It seems unlikely that the Supreme Court intended such a dramatic result in its per curiam opinion in *Olech*." *Campagna v. Mass. Dep't of Envtl. Prot.*, 206 F.Supp.2d 120, 127 (D.Mass.2002), *aff'd*, 334 F.3d 150 (1st Cir.2003). Accordingly, we hold that the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees.

Defendants note the numerous courts have held the *Engquist* is bars "class of one" claims in relation to discretionary decisions made outside the employment context. Nonetheless, this Court will assume, without deciding, that the class of one applies.

To succeed on a "class of one" equal protection claim, a plaintiff bears the burden to prove that: (1) he/she has been intentionally treated differently than others; and (2) there is no rational basis for the difference in treatment. *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Seariver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

### Similarity Requirement

As to the different treatment element, a plaintiff must demonstrate that "the level of similarity

between plaintiff and the persons with whom they compare themselves must be extremely high."
*Neilson v. D'Angelis*, 409 F.3d 100, 104 (2nd Cir. 2005).  To succeed, plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).  The similarity requirement requires a plaintiff to show:

> no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

*Neilson*, 409 F.3d at 105; *see Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (plaintiff "must show that the parties with whom he seeks to be compared have engaged in the same activity vis-a-vis the government entity without such distinguishing or mitigating circumstances would render the comparison in utile.")

Here, no evidence is introduced by plaintiff of the similarity between plaintiff and others who may have been treated differently.  No evidence is introduced to support similarity in circumstances and any difference in treatment.  Defendants present evidence that plaintiff's case was treated on an individual basis upon the evidence available.

<u>Rational Basis</u>

To prevail on the rational basis element, a "class of one" plaintiff must "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Lauth*, 424 F.3d 631, 634 (7th Cir. 2005) (quoting *Board of Trustees v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955 (2001)).  The "rational-basis inquiry is a very lenient one, and specifically 'attach[es no] legal significance to the timing' of legislative or municipal action." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004) (quoting *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822, n. 3 (11th Cir. 1998)).  "Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Garrett*, 531 U.S. at 367, 121 S.Ct. 955.

In *Bizzarro v. Miranda*, 394 F.3d 82, 88-89 (2nd Cir. 2005), the Second Circuit Court of Appeals explained:

> The pertinent question in a constitutional claim is not whether the defendants

> correctly understood the rules they were enforcing. *Olech* does not empower federal courts to review government actions for correctness. Rather, an *Olech*-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency.

A decision "can be considered irrational" only when the decision-maker "acts with no legitimate reason for its decision." *Harlen v. Associates v. Incorporate Village of Mineola*, 273 F.3d 494, 500 (2nd Cir. 2001) (quotation marks and citation omitted). "[D]ecisions that are imprudent, ill-advised, or even incorrect may still be rational." *Rossi v. West Haven Bd. of Ed.*, 359 F.Supp.2d 178, 183 (D. Conn. 2005).

Here, as the undisputed evidence shows there was probable cause for the arrest and holding plaintiff for the alleged crime. Thus, there is a rational basis for any different treatment of plaintiff by the City and MacAlpine. Accordingly, as plaintiff does not show either element under a "class of one," he cannot establish a claim for violation of equal protection.

**G.     Fresno City Liability for Section 1983 Claims**

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local

governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018.

An actionable policy or custom is demonstrated by:

1. An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2. A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3. Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

Plaintiff has not identified or presented evidence of an official policy or custom of any entity Defendant that caused the alleged constitutional violations. Plaintiff has not offered any evidence against the officer. Plaintiff stands on the allegations in the complaint. Plaintiff tenders no facts other than the alleged personal misdeeds of the officer as evidence of a policy statement, ordinance, regulation, decision, custom, usage, or practice of the City of Fresno that caused his injury. Accordingly, his *Monell* claim fails as a matter of law. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Accordingly, summary judgment is granted as to Plaintiff's § 1983 claims against the City of Fresno.

**H.     Conspiracy pursuant to 42 U.S.C. 1983**

Plaintiff's fourth cause of action also claims conspiracy under §1983. (Doc. 1, Complaint ¶89.) Defendants argue that there is no evidence that defendants entered into any agreement to violate plaintiff's constitutional rights.

To show a conspiracy between the defendants under § 1983, plaintiffs must allege "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.1989) (en banc). Thus, a cause of action under § 1983 for conspiracy, plaintiff must show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir.1991)).

Plaintiff has not come forward with evidence to show there was an agreement between defendants or whether the agreement was explicit or inferred. Defendants present evidence that they did not conspire to violate plaintiff's rights. Defendant MacAlpine states he did not handle the fire

investigation "differently because it involved Plaintiff;" he was not asked to handle it differently because it was plaintiff; and he did not reach any agreement with anyone about violating plaintiff's rights. (Doc. 110, MacAlpine Decl. ¶¶15-18.) Plaintiff admits that defendants did not conspire with other defendants to violate plaintiff's constitutional rights. (Doc. 111, Rubin Decl., RFA no.7.)[2] Further, as explained above, there is no question of fact as to whether any constitutional violation occurred. It is undisputed that there was probable cause to arrest and hold plaintiff for the alleged crime. Accordingly, as there is no evidence that defendants conspired with anyone, summary judgment on this claim is appropriate.

**I.  Qualified Immunity as to Defendant MacAlpine**

Defendants argue that defendant MacAlpine is immune from liability for his actions.

Where a constitutional violation occurs, a police officer is entitled to qualified immunity if he acted reasonably under the circumstances. *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2007). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272, outlined a two-step approach to qualified immunity. The first inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. The Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court further stated that "the judges of the district courts and the courts of appeals are in the best position to determine [what] order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id.* at 821. When law enforcement officials

---

[2] Defendants present evidence that they propounded Requests for Admissions ("RFA") to plaintiff, to which plaintiff never responded. Pursuant to Fed.R.Civ.P. 36, RFAs not responded to are deemed admitted. Rule 36 ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer . . .")

reasonably but mistakenly conclude that probable cause is present, the officials should not be held personally liable. *Crowe v. County of San Diego*, 593 F.3d 841 (9th Cir. 2010). Officers are immune from suit when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they "cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves." *Crowe,* 593 F.3d at 868.

Here, the undisputed evidence establishes that MacAlpine acted reasonably under the circumstances. The investigator of the fire concluded that the fire in the home was "suspicious." (Doc. 110, MacAlpine Decl. ¶3.) MacAlpine of the City continued the investigation. In the course of his investigation, MacAlpine examined the residence and materials provided by the initial investigators; met with witnesses and Plaintiff; reviewed materials from the insurance adjuster pursuant to the Insurance Code3; communicated with the fire investigator for the insurance company; and allowed Plaintiff to submit to a polygraph test. (Doc. 110, MacAlpine Decl., ¶¶ 2-9; Exs. A-F). MacAlpine was presented with the following facts during his investigation:

1. The residence was in a gated community;
2. Plaintiff was home alone;
3. Plaintiff indicated that he locked the doors and set his alarm;
4. There were no signs of forced entry;
5. Plaintiff had no recent work undertaken on his property;
6. There were multiple areas of origin;
7. Natural or accidental fire was ruled out by various individuals due to multiple fire sets;
8. Plaintiff changed his version of events, and his statements were inconsistent with the physical evidence and/or testimony of others;
9. Plaintiff was less than forthright about his drug use;
10. Plaintiff failed the polygraph test and was determined to be deceitful;
11. Plaintiff was having financial problems;
12. Plaintiff made an insurance claim;
13. A cigarette lighter was found in one of the rooms which was a point of origin.

(Doc. 110, MacAlpine, ¶ ¶ 2-9, Exs. A-F; Doc. 108 Eastom, ¶¶ 2-5, Ex. A; Doc. 109, RFA Nos. 2-5, 10, 21, 26 [MacAlpine]; R.A. Nos. 10, 21-24, 26 [City]). MacAlpine then issued an arrest declaration, obtained a warrant, and arrested plaintiff. Based on the above undisputed facts, there is no issue of fact whether MacAlpine acted reasonably under the circumstance. Accordingly, as a matter of law, plaintiff has not raised an issue of fact as to whether MacAlpine is entitled to qualified immunity.

**J.    Supervisor Liability Under 42 U.S.C. §1983**

The Sixth Cause of action alleged Supervisory Liability against defendant MacAlpine. As best the allegations can be read, they allege that MacAlpine failed to "instruct, supervise and disciple on a continuing basis the subordinates" from harassing plaintiff, unlawfully arresting plaintiff, conspiring to violate plaintiff rights, and depriving plaintiff of his rights. (Doc. 1, Complaint ¶118.)

**1.    Overview of Supervisor Liability**

A supervisory official may be liable under Section 1983 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir.1991)), *cert. denied,* 502 U.S. 1074 (1992); *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (same). Supervisors can be held liable for (a) their own culpable action or inaction in the training, supervision, or control of subordinates; (b) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others. *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Under no circumstances, however, is there *respondeat superior* liability under § 1983; that is, there is no liability under § 1983 solely because one is responsible for the actions or omissions of another. *Redman v. County of San Diego*, 942 F.2d at 1446. A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

1              **2.     Defendant MacAlpine was not a Supervisor**

2       There is no evidence that MacAlpine was a supervisor for anyone. Defendant presents

3 evidence that MacAlpine did not supervise the only other person involved in the arson investigation,

4 Howard Eastom. Investigator Eastom presents evidence that defendant MacAlpine was not his

5 supervisor and did not train him. (Doc. 108, Eastom Decl. ¶13.) Defendant MacAlpine presents

6 evidence that he is not investigator Eastom's supervisor. (Doc. 110, MacAlpine Dec. ¶19.) There is

7 no evidence that, even if MacAlpine was a supervisor, he "participated in or directed" any violations.

8 There is no evidence MacAlpine was aware that there was the potential of any violations. Thus,

9 plaintiff has failed to raise any issue of fact that MacAlpine was a supervisor, and even if he was a

10 supervisor, he knew or participated in alleged constitutional violations.

11             **3.     No Constitutional Violation**

12      Plaintiff must come forward with evidence of a constitutional violation. As explained *supra*,

13 there is no evidence of a constitutional violation by the City or MacAlpine. There is no evidence of

14 a constitutional violation by investigator Eastom.

15 **K.    Claim for Damages under the California Constitution**

16            **1.     Damages under the California Constitution**

17      Defendant argues California law does not permit a claim for damages for violation of Article

18 1 of the California Constitution. *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300,

19 329 (2002).

20      The California Supreme Court has held that state constitutional provisions do not necessarily

21 support a claim for monetary damages. *Katzberg v. Regents of University of California*, 29 Cal.4th

22 300, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002) (the California Supreme Court declined to recognize a

23 constitutional tort to remedy the asserted violation of Art. 1, § 7(a) in the absence of a statutory

24 provision or common law tort authorizing such a remedy.) State courts have expressly rejected state

25 constitutional damage claims for violation of the due process and equal protection clauses. *Javor v.

26 Taggart*, 98 Cal.App.4th 795, 807, 120 Cal.Rptr.2d 174 (2002) ("It is beyond question that a plaintiff

27 is not entitled to damages for a violation of the due process clause or the equal protection clause of

28 the state Constitution."). *See also Degrassi v. Cook*, 29 Cal.4th 333, 335, 127 Cal.Rptr.2d 508, 58

P.3d 360 (2002) (no private right of action for damages for violation of free speech clause of California Constitution). A plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution. *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services*, 83 Cal.App.4th 809, 815-823, Cal.Rptr.2d 87 (2000) (due process); *Gates v. Superior Court,* 32 Cal.App.4th 481, 516-524, 38 Cal.Rptr.2d 489 (1995) (equal protection.)[3]

Accordingly, plaintiff''claims for damages for Due Process and Equal Protection violations are inconsistent with California law.

### 2. **No evidence that Plaintiff Exhausted the Government Tort Claims Act**

Defendants argue that the claim should be dismissed because plaintiff did not file a Government Tort Claim.

Under the Government Claims Act, there is no common law tort liability for public entities in California; instead, such liability must be based on statute. Cal.Gov.Code § 815(a); *Guzman v. County of Monterey*, 46 Cal. 4th 887, 95 Cal. Rptr. 3d 183, 209 P.3d 89 (2009). No suit for money or damages may be brought against a government entity (or against a government employee acting in the scope of employment) unless and until a timely claim has been presented pursuant to the Government Claims Act (Gov.C. § 810 et seq.) Claims for personal injury (including wrongful death) or property damage must be presented "not later than six months after the accrual of the cause of action." Gov. Code §911.2.

Defendants present undisputed evidence that plaintiff did not file a tort claim. Defendants present undisputed evidence that plaintiff did not file any claim arising out of the fire, subsequent investigation and/or his prosecution. (Doc. 112, Trost Decl. ¶3.) Thus, as plaintiff did not file a tort

---

[3] The *Katzberg* case did not preclude all damages claims for state constitutional violations. *Katzberg* sets out a framework to determine whether damages are appropriate. *Katzberg*, 29 Cal.4th at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. Under the *Katzberg* test, a court considering this question must: (1) look at the language and history of the provision for an affirmative intent to authorize a claim for damages; (2) in the absence of such affirmative intent, consider whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision; (3) if these factors weigh against the recognition of a right to damages, the inquiry ends. If, however, the factors weigh in favor of recognizing such a right, the court should also consider any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgement, avoiding of adverse policy consequences, considerations of government fiscal policy, practical issues of poof, and the competence of courts to assess particular types of damages. Id. at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. The Court has not been presented with arguments by either party as to the *Katzberg* factors.

claim, he may not pursue a tort claim arising from the action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment in favor of defendant City of Fresno and in favor of defendant Don MacAlpine and against plaintiff Gregory Morris as follows:

1. The motion is GRANTED as to Fourth Cause of action for violation of plaintiff's civil rights pursuant to 42 U.S.C. §1983;
2. The motion is GRANTED as to Fifth Cause of action for violation of Due Process and Equal Protection, "unlawful warrantless arrest and prosecution without probable cause;"
3. The motion is GRANTED as to Sixth Cause of action for supervisory liability for constitutional violations;
4. The motion is GRANTED as to the Ninth Cause of action for damages under the California Constitution.

IT IS SO ORDERED.

**Dated:   June 9, 2010**                              /s/ Lawrence J. O'Neill
                                                                  UNITED STATES DISTRICT JUDGE